## LYONS v LYONS

Docket No. 67889. Submitted March 8, 1983, at Lansing.—Decided May 5, 1983.

Charles C. Lyons, Jr., plaintiff, was divorced from defendant, Marcia A. Lyons, Branch Circuit Court, Thomas C. Megargle, J. Custody of the parties' three minor children was awarded to plaintiff. During the three-year pendency of the action the defendant had custody of the children and visitation by the plaintiff was rare and occasionally thwarted by defendant. The day following the issuance of the divorce judgment the friend of the court petitioned the court for an order directing the Ottawa County Sheriff's Department to assist plaintiff in obtaining custody of the children. The order was granted and the children were taken from defendant's home by sheriff's deputies at 2:00 a.m. the following morning. Defendant appeals the grant of custody to plaintiff. *Held:*

1. The court rule providing an automatic 20-day stay of enforcement of judgments was not complied with. Further, the manner in which custody of the children was obtained is condemned.

2. The trial court erred in finding that no established custodial environment with defendant existed. The trial court failed to apply a standard of clear and convincing evidence in determining whether a change of custody was in the best interests of the children.

The custody order is vacated. Remanded with instructions.

1. APPEAL — CHILD CUSTODY — STANDARD FOR REVIEW.

All orders and judgments of a circuit court in a child custody matter must be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or commit-

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 136.

24 Am Jur 2d, Divorce and Separation §§ 791, 793.

[2] 24 Am Jur 2d, Divorce and Separation §§ 812, 820.

42 Am Jur 2d, Infants § 57.

[3] 47 Am Jur 2d, Judgments § 767.

ted a palpable abuse of discretion or a clear legal error on a major issue (MCL 722.28; MSA 25.312[8]).

2. PARENT AND CHILD — CHILD CUSTODY — CHANGE OF CUSTODY.
   A court must find clear and convincing evidence that a change of custody is in a child's best interest before such a change is ordered after a custodial environment has been established (MCL 722.27[c]; MSA 25.312[7][c]).

3. PARENT AND CHILD — CHILD CUSTODY — STAY OF ENFORCEMENT.
   The court rule which provides for an automatic 20-day stay of enforcement of judgments applies to change of custody orders which are part of a trial court's final judgment (GCR 1963, 530).

*Kelly & Stevens* (by *Ralph P. Stevens*), for plaintiff.

*Cherry & Cherry* (by *Michael H. Cherry*), for defendant.

Before: M. J. KELLY, P.J., and GRIBBS and R. L. TAHVONEN,* JJ.

M. J. KELLY, P.J. Defendant mother appeals as of right from the trial court's grant of custody of the parties' three minor children to plaintiff father.

The parties were married on May 26, 1972. Three children were born of the marriage, Dale on January 1, 1973, Jason on December 12, 1975, and Melissa on January 11, 1977.¹ Plaintiff filed for divorce on August 23, 1979, and requested that custody of the children be awarded to defendant.

Although the specific dates are not clear from the record, at about the time that the complaint

* Circuit judge, sitting on the Court of Appeals by assignment.

¹ Plaintiff stated in his complaint and testified on the witness stand that Melissa was born January 11, 1976. Defendant testified that Melissa was born January 11, 1977. Due to the proximity of Jason's birth, we find defendant's date more probable.

for divorce was filed, defendant took her children to the home of plaintiff's parents, "thinking he would take care of them for a while until I could get myself situated". Although Dale, the eldest, was in school, plaintiff sent the children to Texas to stay with their great aunt and uncle. Defendant was not told where the children were. On September 10, 1979, plaintiff filed an amended complaint, seeking permanent custody of the children.

On October 25, 1979, plaintiff was ordered to return the children to Michigan. The Branch County Friend of the Court was awarded technical "custody and jurisdiction" but the care and physical custody of the children was awarded to defendant.

The children continued to live with defendant through the pendency of this action from October 25, 1979, through November 2, 1982. They lived in Coldwater, Michigan, for about one year. Prior to school starting the next year, they moved north to live in a two-bedroom house in Nunica, Michigan. The children attended school and defendant participated in parent meetings at the school. Dale participated in Little League baseball.

Visitation by plaintiff during the pendency of the divorce action was spotty. The parties agree that in October, 1980, there had been a successful visitation by plaintiff. Every other visitation, however, resulted in some type of altercation, with the police occasionally being called. Plaintiff then stopped visiting his children.[2] He explained that he didn't attempt further visitation "because it seems like every time I did, the kids would get the backlash of all of it".

[2] It is unclear from the record whether this period of no visitation from the father lasted from October, 1980, until June, 1982, or from October, 1981, until June, 1982.

In June, 1982, defendant brought the children down from Nunica to the Coldwater area for a visit with both sets of grandparents. Without defendant's knowledge, plaintiff took the children from the home of defendant's mother. The children were gone for about a day and were not returned until after plaintiff was ordered to do so.[3]

The next month, plaintiff arranged through the friend of the court to visit the children in Nunica. Although defendant was aware that plaintiff was coming, she took the children to attend Dale's Little League baseball game. Defendant admitted that she intentionally thwarted this visitation effort by plaintiff. Plaintiff did not see the children on that visit.

Trial was eventually commenced on October 1, 1982. Thereafter, on October 18, 1982, the trial court found that no custodial environment had been established with the mother and awarded custody of the three children to plaintiff. On November 1, 1982, after denying defendant's motion for reconsideration on the question of whether a custodial environment had been established, the trial court issued its judgment ordering a change in custody.

In spite of the fact that GCR 1963, 530.1 provides an automatic stay of 20 days before a judgment may be enforced,[4] plaintiff appeared at defendant's home with Ottawa County Sheriff's Deputies at 11:45 p.m., on November 1, 1982, and demanded the children. Defendant informed plaintiff and the deputies that her attorney had alerted

---

[3] It is unclear who "ordered" plaintiff to return the children.

[4] The automatic stay applies to change of custody orders which are part of a trial court's final judgment. The automatic stay is not applicable to interlocutory temporary custody orders, unless ordered by the trial court on motion for good cause shown. See GCR 1963, 530.1.

her to the 20-day stay rule and she refused to release the children. The *next day,* the friend of the court, not plaintiff's own attorney, petitioned the trial court for an order directing the Ottawa County Sheriff's Department to assist plaintiff in taking the children into custody and to restrain defendant from obstructing the same. That same day, without notice to defendant or her attorney, the trial court entered such an order. According to defendant's affidavit, Ottawa County Sheriff's Deputies arrived at her home at 12:30 a.m. on November 3, 1982, and informed her that they were there to take possession of the children for placement in a youth center. They awoke the children at 2:00 in the morning and left with them. The children are unlikely to forget it and we would like to make sure the friend of the court and the sheriff do not either.

We are unable to surmise why GCR 1963, 530.1 was not complied with,[5] why the trial court signed an *ex parte* order directing the deputies to seize

---

[5] We apprehend that compelling circumstances could justify a trial court in dispensing with the automatic stay of its final child custody judgment. Section 7(f) of the Child Custody Act of 1970, MCL 722.27(f); MSA 25.312(7)(f), empowers a trial court in a child custody dispute to take any action considered by it to be necessary. Although not required to decide the issue, we believe that this statutory provision empowers a trial court to dispense with GCR 1963, 530.1 in a child custody case. Nevertheless, any such dispensation of the automatic stay should not be exercised routinely or peremptorily. The automatic stay provision provides an aggrieved party time to proceed to the Court of Appeals for temporary relief while awaiting a decision on the merits of an appeal. See generally GCR 1963, 530.6, 808.5(2). Orderly application of the stay provisions contained in the court rules provides stability in a child custody case without the child(ren) being subjected to the hazard of shuttle between parents as the controversy reaches different levels of the judicial system. Any dispensation of GCR 1963, 530.1 in a child custody case should be done only after notice and an opportunity to be heard have been given to the parties. The trial court should enunciate on the record its reasons for dispensing with the automatic stay in order to assure the parties and this Court that the trial court has not abused its discretion under the Child Custody Act or resorted to dispensing with the automatic stay routinely.

the children, or why it was necessary for the deputies to descend like storm troopers on the mother's home after midnight. We have no explanation from the sheriff, the father, or the trial judge before us. According to defendant's brief, the friend of the court, an attorney, verbally conceded the error but professed ignorance of the rule. A rebuke is due. On the face of the matter, this procedure reflects at least extremely poor judgment, at worst an abuse of process. In particular, we condemn the awaking of young children at 2:00 a.m. as a method for seeking enforcement of a custody judgment, whether or not the judgment is in a state of automatic suspension. Children are to be treated as human beings, not as pawns in a battle between litigants.

On appeal, defendant argues that the trial court erred in failing to find that an established custodial environment existed for the children. We agree.

Our review of this case is limited by § 8 of the Child Custody Act:

"To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28; MSA 25.312(8).

In adopting the Child Custody Act, the Legislature intended to minimize the prospect of unwarranted and disruptive changes of custody and, therefore, erected a barrier against removal of children from an established custodial environment, except in the most compelling cases. *Baker v Baker,* 411

Mich 567, 576-577; 309 NW2d 532 (1981). Section 7(c) provides in part that:

"The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered." MCL 722.27(c); MSA 25.312(7)(c).

Under this section, once a custodial environment has been established a court must find clear and convincing evidence that a change of custody is in the child's best interest before such a change may be ordered. See *Baker, supra,* p 579.

The trial court erred in finding that no established custodial environment existed. The children had an established life in Nunica. Dale had been in school there for two years. The record clearly reflects that the children looked solely to defendant for guidance, discipline, the necessities of life, and emotional support and comfort. With this stable, settled atmosphere in place, the trial court erred in failing to find an established custodial environment and in not applying a clear and convincing evidentiary standard when determining whether a change of custody was in the best interests of the children.

The trial court's custody order is vacated. The case is remanded for reconsideration of custody under the correct evidentiary standard of "clear and convincing proof".

The trial court is also directed to reconsider its denial of defendant's motion for attorney fees and to enunciate on the record the basis for its decision on reconsideration.

Pursuant to GCR 1963, 821.3, the clerk of this Court is hereby directed to immediately transmit a copy of this Court's decision and *remittitur* to the clerk of the trial court upon the filing of this opinion. The trial court shall forthwith conduct a rehearing and issue an opinion and judgment within 30 days of receiving this Court's opinion. The status quo shall be maintained until the trial court's judgment is rendered.

Vacated and remanded. Costs to appellant.

We retain jurisdiction.