LOYD v LOYD

Docket No. 120413. Submitted February 14, 1990, at Detroit. Decided
March 20, 1990.

Kathlene S. Loyd and Daniel T. Loyd were divorced in Tennessee
and physical custody of their minor child was given to Kath-
lene. Later, the parties entered into a stipulation granting
physical custody of their child to Daniel until the first Saturday
in August, 1989 (August 5), at which time physical custody was
to be transferred to Kathlene. The stipulation was approved by
the Tennessee court and incorporated in an order. Both parties
moved to Michigan. In May of 1987, Kathlene filed a motion in
the Wayne Circuit Court to modify the Tennessee order and
give her custody again. The court entered a consent order
preserving the status quo and referring the case to the Friend
of the Court. On August 4, 1989, one day prior to when custody
was to be transferred to Kathlene pursuant to the Tennessee
custody order, Daniel filed an ex parte order seeking to main-
tain physical custody of the child and an order to show cause
why Kathlene should not be enjoined from removing the child
from Daniel's custody until a full hearing was conducted. The
court signed and entered both orders. On August 23, 1989,
Kathlene filed a motion for enforcement of the Tennessee
custody order. The court, Thomas J. Foley, J., ordered enforce-
ment of the Tennessee order. Daniel Loyd appeals.

The Court of Appeals *held:*

1. Enforcement in Michigan of a custody order from another
state is mandatory, if the state which entered the order has
adopted the Uniform Child Custody Jurisdiction Act. Tennessee
has adopted the Uniform Child Custody Jurisdiction Act.
Therefore, enforcement of the Tennessee order was appropriate.
Further, a court having jurisdiction may only modify a custody
order of a court of another state having appropriate jurisdiction
where the foreign court no longer has jurisdiction under the
jurisdictional prerequisites of the Uniform Child Custody Juris-

REFERENCES

Am Jur 2d, Divorce and Separation §§ 1145-1147.
Validity, construction, and application of Uniform Child Custody
Jurisdiction Act. 96 ALR3d 968.

diction Act or the foreign court has declined to exercise its jurisdiction. Since this was not the case, the circuit court was without power to modify the Tennessee custody order.

2. The court properly upheld the Tennessee order without conducting a hearing as to the best interest of the child. No modification of a custody order was involved, there was no allegation that the child's welfare was in jeopardy, and the policy is to encourage voluntary relinquishment of custody to protect the best interest of the child by returning custody to the parent who does so.

3. The court acted properly in refusing to ignore the custody stipulation incorporated in the Tennessee order and failing to hold a hearing into the best interest of the child. If Daniel wanted such a hearing, he should have moved for a change of custody, not an ex parte order.

4. The court's failure to find an established custodial environment with Daniel and to require Kathlene to demonstrate by clear and convincing evidence that a custodial change was in the child's best interest was proper. Those statutory requirements apply only to modifications of custody orders, not to enforcement thereof.

5. The claim that the court erred in ordering a transfer of custody prior to the 21-day automatic stay provided for in the court rules is moot.

Affirmed.

1. PARENT AND CHILD — UNIFORM CHILD CUSTODY JURISDICTION ACT — CHILD CUSTODY.

The Uniform Child Custody Jurisdiction Act governs the power of the state's courts to enforce the custody orders of other states and to make child custody determinations, both by initial decree and by modification (MCL 600.651 et seq.; MSA 27A.651 et seq.).

2. PARENT AND CHILD — UNIFORM CHILD CUSTODY JURISDICTION ACT.

The purposes of the Uniform Child Custody Jurisdiction Act include the avoidance of jurisdictional competition and conflict with courts of other states, promotion of cooperation with the courts of other states to ensure that the court in the best position to do so decides the case in the interest of the child, deterrence of continuing custody controversies and abductions, avoiding relitigation of custody decisions when possible, and facilitating enforcement of custody orders (MCL 600.651; MSA 27A.651).

3. PARENT AND CHILD — UNIFORM CHILD CUSTODY JURISDICTION ACT
   — FOREIGN CUSTODY ORDERS.

   Enforcement in Michigan of a custody order from another state is
   mandatory if the state which entered the order has adopted the
   Uniform Child Custody Jurisdiction Act (MCL 600.663; MSA
   27A.663).

4. PARENT AND CHILD — UNIFORM CHILD CUSTODY JURISDICTION ACT
   — FOREIGN CUSTODY ORDERS — MODIFICATION OF CUSTODY
   ORDERS.

   A court having jurisdiction may only modify a custody order of a
   court of another state having appropriate jurisdiction where
   the foreign court no longer has jurisdiction under the jurisdic-
   tional prerequisites of the Uniform Child Custody Jurisdiction
   Act or the foreign court has declined to exercise its jurisdiction
   (MCL 600.664[1]; MSA 27A.664[1]).

*Gabrian & Parks, P.C.* (by *Janet J. Parks*), for plaintiff.

*Victor, Robbins & Bassett* (by *Scott Bassett*), for defendant.

Before: HOLBROOK, JR., P.J., and HOOD and R. B. BURNS,* JJ.

PER CURIAM. Defendant appeals as of right from an order of the Wayne Circuit Court enforcing a 1985 Tennessee postdivorce child custody order granting physical custody of the minor child, Heather Loyd (born March 16, 1984), to plaintiff. We affirm.

Plaintiff and defendant were divorced on July 19, 1985, by a judgment entered in Montgomery County, Tennessee. Both parties were originally from Michigan but were residing in Tennessee because defendant had enlisted in the U.S. Army and was stationed at Fort Campbell, Kentucky. The judgment of divorce awarded the parties joint

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

custody of Heather but provided that physical custody would be with plaintiff.

On December 19, 1985, the parties entered into a stipulation granting physical custody of their daughter to defendant until the first Saturday in August, 1989 (August 5), at which time physical custody was to be transferred to plaintiff. The parties also agreed that each would have reasonable visitation. The stipulation was approved by the Tennessee court and incorporated in an order filed on December 27, 1985.[1]

In January, 1986, defendant was honorably discharged from the army and returned to Michigan with Heather. Plaintiff returned to Michigan in the spring of 1987. Both parties subsequently remarried.

On May 6, 1987, plaintiff filed a motion in Wayne Circuit Court seeking modification of the Tennessee custody order so as to once again be awarded custody. On May 21, 1987, a consent order was entered directing that neither party remove Heather from the court's jurisdiction. The order also provided specific visitation times for plaintiff and referred the case to the Friend of the Court for investigation and recommendation.[2]

Subsequently, the Friend of the Court issued its recommendation that plaintiff's request for a change of custody should be denied and physical custody continued with defendant. Plaintiff filed objections to the Friend of the Court's recommendations, but the record indicates that no additional action was taken by the parties for approximately two years. During this period custody of Heather remained with defendant.

---

[1] At the time this order was filed, the parties were residents of Tennessee and the Tennessee court had jurisdiction over the case.

[2] Visitation: (1) every other weekend; (2) every other legal holiday; and (3) two weeks during the summer.

On August 4, 1989, one day prior to the time when custody was to be transferred to plaintiff pursuant to the Tennessee custody order, defendant filed an ex parte order seeking to maintain physical custody of Heather and an order to show cause why plaintiff should not be enjoined from removing Heather from defendant's custody until a full hearing was conducted. The court signed and entered both orders. Plaintiff then filed a motion for enforcement of the Tennessee custody order on August 23, 1989.

A hearing on the matter was conducted on September 1, 1989. After entertaining argument from both sides, the court ruled:

> We have a Tennessee Judgment which is entitled to full faith and credit. No question what the Judgment says. There is no question that there is not one allegation that doesn't indicate that the mother is [a] totally fit person to have this child. There is no emergency that exists which would deny her the provision of that Judgment. There is nothing to indicate that the welfare of the child is in any way jeopardized.
>
> The Petition in 1987 attempted to do just what the Defendant is trying to do now, is to circumvent the Judgment in the Court of Tennessee without any factual basis and the Court has no basis whatsoever to upset the Judgment of the Tennessee Court and will grant in full faith and credit and direct that the child be forthwith turned over to the mother.
>
> * * *
>
> There is no indication that this child shouldn't be with the mother pursuant to the agreement and the understanding of the Tennessee Court and the Tennessee Court is presumed to have all the interest of the child at heart.

Pursuant to defendant's request, the court

agreed to stay its ruling until September 6, 1989, to allow defendant an opportunity to seek a stay of proceedings with this Court.

On September 6, 1989, this Court denied defendant's motion for a stay of proceedings. On September 26, 1989, the Supreme Court denied defendant's application for leave to appeal. Custody of Heather was transferred to plaintiff as ordered.

On appeal, defendant raises several procedural and substantive questions in support of his argument that the trial court erred in transferring custody of Heather to plaintiff. For clarity purposes, we will first address the issue regarding the circuit court's jurisdiction over the parties' custody dispute.[3]

I

Defendant contends that, under the Uniform Child Custody Jurisdiction Act (UCCJA), Michigan rather than Tennessee had jurisdiction to determine custody of Heather. Therefore, the trial court erred in strictly enforcing the Tennessee custody order.

The UCCJA governs the power of our state's courts to: (1) enforce custody orders of other states; and (2) make child custody determinations. *Bivens v Bivens,* 146 Mich App 223, 227; 379 NW2d 431 (1985). The purposes of the UCCJA are outlined in MCL 600.651; MSA 27A.651, but have been summarized as

avoidance of jurisdictional competition and conflict with courts of other states, promotion of cooperation with the courts of other states to ensure that the court in the best position to do so decides the case in the interest of the child, deterrence of

---

[3] We have rearranged the order of defendant's arguments.

continuing custody controversies and abductions, avoiding relitigation of custody decisions when possible, and facilitating enforcement of custody orders. [*Thompson v Hair,* 146 Mich App 561, 563-564; 381 NW2d 765 (1985), lv den 424 Mich 864 (1985).]

Under the UCCJA, enforcement of a custody or visitation order from another state is mandatory if the state which entered the order has adopted the UCCJA. *Bivens, supra; Thompson, supra.* Specifically § 663 of the UCCJA provides:

The courts of this state shall recognize and enforce an initial or modification decree or judgment of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with sections 651 to 673 or which was made under factual circumstances meeting the jurisdictional standards of sections 651 to 673 as long as this decree or judgment has not been modified in accordance with jurisdictional standards substantially similar to those of sections 651 to 673. [MCL 600.663; MSA 27A.663.]

In the instant case, Tennessee has adopted the UCCJA. See Tenn Code Annotated, §§ 36-6-201 to 36-6-225. In addition, the December 27, 1985, order incorporating the parties' stipulation that custody would be transferred to plaintiff in August, 1989, was entered while the parties and the child were still residents of Tennessee. In addition, it appears that no modifications to this order were made. Therefore, the Wayne Circuit Court was obligated, under § 663 of the UCCJA, to enforce the Tennessee custody order.

However, our analysis does not end here because defendant also argues that the Wayne Circuit Court erred in finding that it did not have jurisdiction to determine custody of Heather. Defendant

cites §§ 653 and 664 of the UCCJA as support for his proposition that Michigan had such jurisdiction.

We initially note that no determination was ever made that the Wayne Circuit Court did not have jurisdiction to decide custody. In any event, while defendant presents a detailed argument regarding why the Michigan court had jurisdiction under the UCCJA, our review indicates that the bases for defendant's assertions are misplaced.

First, § 653(1) of the UCCJA enumerates prerequisites for jurisdiction by a Michigan court to make custody decisions. The section provides in pertinent part:

(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree or judgment if any of the following exist:

(a) This state is the home state of the child at the time of commencement of the proceeding or had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state.

(b) It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least 1 contestant, have a significant connection with this state and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

(c) The child is physically present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child has been subjected to or threatened with

mistreatment or abuse or is otherwise neglected or dependent.

(d) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivisions (a), (b), or (c) or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child and it is in the best interest of the child that this court assume jurisdiction. [MCL 600.653; MSA 27A.653.]

Close examination of the language of this provision demonstrates that it determines whether the appropriate court of this state will have jurisdiction to make custody decisions by *initial decree or judgment or modification.* In the instant case, the circuit court was not making an initial custody award nor was it modifying the Tennessee order. The court was only deciding whether to enforce (i.e., give full faith and credit to) the prior existing Tennessee custody judgment. Consequently, we feel that § 653(1) of the UCCJA is not applicable to this case.

We also find that defendant's reliance upon § 664 of the UCCJA is misplaced. This section provides in relevant part:

(1) If a court of another state has made a custody decree or judgment, a court of this state shall not modify that decree or judgment unless it appears to the court of this state that the court which rendered the decree or judgment does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with sections 651 to 673 or has declined to assume jurisdiction to modify the decree or judgment and the court of this state has jurisdiction. [MCL 600.664(1); MSA 27A.664(1).]

Under this provision two requirements must be

met before the Wayne Circuit Court could modify the Tennessee custody order: (1) the Tennessee court either did not have jurisdiction under the jurisdictional prerequisites of §§ 652 to 673 of the UCCJA or declined to exercise such jurisdiction; and (2) the Wayne Circuit Court had such jurisdiction. *Bivens, supra,* pp 228-229. See also *Bull v Bull,* 109 Mich App 328, 337; 311 NW2d 768 (1981). In addition, modification can only be ordered after a full hearing on the merits. *Id.; Brown v Brown,* 104 Mich App 621, 626; 305 NW2d 272 (1981). If the above prerequisites are satisfied, then it is true that the Wayne Circuit Court could have assumed jurisdiction under § 664 to modify the Tennessee custody order. However, as previously indicated, this case did not involve modification but involved only the enforcement of an existing foreign custody judgment. While § 664 allows a Michigan court to assume jurisdiction to modify a foreign decree, it has not been interpreted as a means for undercutting the purpose of § 663 of the UCCJA, that the custody decrees of sister states will be recognized and enforced. 9 Uniform Laws Annotated, UCCJA, § 13, p 279, n 1. Therefore defendant's utilization of § 664 as a basis for convincing this court that the Wayne Circuit Court should exercise jurisdiction is not well-founded. It appears that what defendant actually seeks is a change or modification in the custody determination and status. Therefore defendant should have filed the appropriate petition for modification as opposed to an ex parte interim order and order to show cause as was done. The trial court properly enforced the Tennessee custody decree.

II

Defendant next asserts that the circuit court

erred in "changing" the custody of Heather without first conducting a hearing to determine the best interests of the child. Defendant cites MCL 722.27(1)(c); MSA 25.312(7)(1)(c) as support for his proposition that modification must be shown to be in the best interests of the child. This provision in part states:

> If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may:
>
> *   *   *
>
> Modify or amend its previous judgments or orders for proper cause shown or because of the change of circumstances until the child reaches 18 year of age. The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.

The best interests of the child are to be determined by evaluating or considering the eleven factors enumerated in MCL 722.23; MSA 25.312(3).

In the case at bar, however, the trial court was not required to determine the best interests of the child under MCL 722.27; MSA 25.312(7) because no modification of a judgment occurred. The court only enforced the Tennessee custody order requir-

ing transfer of custody to plaintiff in August, 1989, pursuant to the agreement of the parties. The court did not amend or alter the terms of the order. The court did not change custody as defendant contends.

In any event, the court indicated on the record that there were no allegations that plaintiff was an unfit parent and that there was no evidence denoting that Heather's welfare would be jeopardized by enforcing the Tennessee custody judgment. In addition, the court stated that it was presumed that the Tennessee court had the best interests of Heather under consideration when making its determination. These remarks indicate that the court went beyond its duty and made an independent assessment of the facts in finding that custody should be transferred to plaintiff as prescribed by the Tennessee judgment.

Finally, this Court has held that it will give effect to agreements between parents in which the custodial parent temporarily and voluntarily relinquishes physical custody to the noncustodial parent to protect the best interests of the child. *Theroux v Doerr,* 137 Mich App 147, 149-150; 357 NW2d 327 (1984); *Speers v Speers,* 108 Mich App 543, 547-548; 310 NW2d 455 (1981). As stated by the Court in *Theroux, supra:*

[B]ecause of our desire to encourage a mother to relinquish custody if she feels unable to provide for her charges, we have excepted from this general policy [of maintaining continuity to protect best interests of child] the practice whereby a parent temporarily and voluntarily relinquishes custody to protect the children's best interests. We encourage such a practice by returning custody to that parent; otherwise a mother would be reluctant to relinquish custody if she knew that, once it passed to the father, it could not be regained. In

reinforcing this practice, we will reverse a trial court which, because of its desire to maintain continuity, continues custody with the parent who was the beneficiary of a temporary arrangement. [Citations omitted, *id.,* p 150.]

In the instant case, the parties entered into a stipulation in which plaintiff agreed to temporarily relinquish custody to defendant until August, 1989. We, like the *Theroux* Court, choose to encourage such a practice and thus agree with the trial court's enforcement of the Tennessee order transferring custody back to plaintiff.

### III

Defendant also claims that the trial court erred in finding that the parties were bound by the custody stipulation incorporated in the December 27, 1985, Tennessee custody order. Specifically, defendant argues that the court should have ignored the agreement and conducted its own hearing to redetermine the best interests of the child. Defendant properly cites MCL 722.27(1)(c); MSA 25.312(7)(1)(c) for the proposition that an established custodial environment should not be disrupted absent clear and convincing evidence that a custody change is in the best interests of the child. However, as previously concluded, this section is inapplicable to the case at bar because modification of a custody order was not involved, only enforcement of a preexisting order.

Furthermore, we do not agree that the trial court should have ignored the parties' stipulation and conducted a hearing into the best interests of the child. If defendant wanted such a hearing conducted, he should have followed the proper procedural methods and filed a petition or motion seeking a change in custody as opposed to an ex

parte order. The trial court even instructed defendant as much. We find no error.

IV

In addition defendant alleges that, prior to ordering a change in custody, the trial court erred in failing to: (1) determine that Heather's established custodial environment was with defendant; and (2) require plaintiff to demonstrate by clear and convincing evidence that a custody change was in the best interest of the child. Defendant again cites MCL 722.27(1)(c); MSA 25.312(7)(1)(c) as support for this proposition. Again, as previously concluded, the trial court did not modify or change custody but only enforced the existing Tennessee custody order which directed the transfer of custody to plaintiff. It is infinitely clear that MCL 722.27(1)(c); MSA 25.312(7)(1)(c) governs modification and changes in custody decrees. Such was not involved in this case and thus this statute is inapplicable.

V

Defendant's final argument is that the trial court erred in ordering the transfer of custody prior to the expiration of the 21-day automatic stay period provided in MCR 2.614(A)(1).[4] Defendant correctly asserts that the automatic stay period does apply to final judgments involving custody. However, we feel that the court had compelling reasons to order the immediate trans-

[4] We note that MCR 2.614(A)(2)(e) excepts from the automatic stay rule orders concerning custody of minor children. However this rule only exempts interlocutory temporary custody orders. The September 1, 1989, order of the court enforcing the Tennessee custody decree was not an interim order. See *Lyons v Lyons,* 125 Mich App 626, 629, n 4; 336 NW2d 844 (1983), appeal after remand 128 Mich App 203; 339 NW2d 875 (1983).

fer of custody to plaintiff. It was extremely close to the time when Heather would begin school and, thus, it was wise to expedite matters and let Heather enter her new school rather than perhaps switching schools after only a short while. In any event, the court did allow defendant a five-day stay to seek appellate remedies, which he did. Shortly thereafter, this Court denied defendant's motion to stay the proceedings, and the Supreme Court denied his application for leave to appeal. In addition, approximately five months have elapsed since the court's order transferring custody took effect and defendant's claim regarding the 21-day automatic stay period is therefore moot.

VI

In light of the foregoing conclusions, we affirm the trial court's order enforcing the Tennessee custody order transferring custody to plaintiff.

Affirmed.