*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LEON STOUDEMIRE,

        Plaintiff-Appellant,

v

APRIL THOMAS,

        Defendant-Appellee.

FOR PUBLICATION
October 27, 2022
9:15 a.m.

No. 360441
Wayne Circuit Court
LC No. 18-104711-DC

Before: RONAYNE KRAUSE, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Plaintiff-father appeals by delayed leave granted[1] the trial court's order denying his emergency objections to the Friend of the Court referee's recommendation regarding defendant-mother's motion to modify custody and parenting time, and adopting the recommendation in its entirety. On appeal, plaintiff-father argues the trial court erred by modifying custody and parenting time, because it (1) improperly relied on a temporary verbal agreement to modify parenting time to protect the minor child, HMS, from exposure to COVID-19, in supposed contravention of the language of the consent judgment of custody; (2) violated the procedural and substantive requirements of the Child Custody Act of 1970 (CCA), MCL 722.21 *et seq.*; (3) did not make findings regarding HMS's established custodial environment or best interests; (4) failed to hold defendant-mother to the proper burden of proof; and (5) did not conduct an evidentiary hearing. We vacate and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a postjudgment motion to change custody and parenting time, after the parties stipulated to a consent judgment regarding custody, parenting time, and child support. The consent judgment awarded joint legal and physical custody of HMS to the parties, with alternating weekly parenting time. The consent judgment indicated: "Parties shall continue

---

[1] *Stoudemire v Thomas*, unpublished order of the Court of Appeals, entered April 1, 2022 (Docket No. 360441).

alternating weeks, or until the further order of the court[.]" The consent judgment further noted: "The parties may mutually agree to modify the parenting plan, except that any agreement to modify is not a permanent waiver of this schedule unless specifically provided for in writing as a permanent change."

According to plaintiff-father, in March 2020, when HMS was approximately six years old, defendant-mother asked plaintiff-father to permit HMS to live primarily with her, out of concern for HMS's health in light of the COVID-19 pandemic, and plaintiff-father agreed to the change. Apparently, neither the request nor the consent was in writing. In July 2021, defendant-mother moved for an order changing custody, parenting time, and child support, alleging there was a change of circumstances after HMS began living primarily with defendant-mother, and, as a result, HMS's sole established custodial environment was with defendant-mother. Defendant-mother asserted that plaintiff-father had only seen HMS for 23 overnights between March 2020 and May 2021. Plaintiff-father contended that he had at least 52 overnights during that period, in addition to telephone calls with HMS at least two to three times a week, and that he brought lunch to HMS at least two to three times a week. Because of the alleged change in circumstances, defendant-mother requested an order awarding sole physical custody to defendant-mother and reducing plaintiff-father's parenting time.

At the hearing on defendant-mother's motion before the Friend of the Court referee, defendant-mother further argued that plaintiff-father was not involved with HMS's medical care or education, and he was unable to care for HMS under the current parenting time schedule because of his long work hours. Plaintiff-father argued he only allowed the change in parenting time to occur to protect HMS from possible COVID-19 exposure. He believed that, on the basis of defendant-mother's representations and the language in the consent judgment, his assent would not waive his right to the custody arrangement and parenting schedule set forth in the consent judgment. Plaintiff-father acknowledged he was not involved in HMS's virtual schooling, because he was not technologically savvy, but he contended it was HMS's maternal half-brother, not defendant-mother, who was helping HMS with the virtual format. Plaintiff-father brought HMS lunch two to three times per week to maintain his relationship with her, and he paid for her summer camp. Plaintiff-father alleged defendant-mother's motion was filed because he asked to return to the alternating week schedule once the COVID-19 pandemic waned. Defendant-mother never explicitly confirmed plaintiff-father's statement that he agreed to permit HMS to reside primarily with defendant-mother out of concern for HMS's health in light of the pandemic. However, despite many opportunities to do so, at no time during the proceedings does it appear that she has ever suggested that the March 2020 change in HMS's living arrangement might have been for any other reason.

Each party assured the referee that they were able to provide for HMS, had no pending criminal matters, drug or alcohol issues, or chronic health concerns. Defendant-mother asserted that she had obtained a personal protection order against plaintiff-father because he verbally, mentally, and physically abused her; plaintiff-father only admitted to a single incident in which he threw water on her. The parties agreed they could work with each other to make major decisions for HMS.

The referee issued a recommendation finding defendant-mother demonstrated by a preponderance of the evidence there was proper cause or a change of circumstances warranting

review of custody and parenting time. The referee found it was in HMS's best interests to temporarily modify parenting time to reflect the actual schedule between the parents, because HMS lived primarily with defendant-mother for 17 months. The referee ordered that HMS would reside primarily with defendant-mother, with plaintiff-father having parenting time every other weekend and Tuesday nights.

Plaintiff-father objected to the referee's recommendation, arguing the recommendation was in error, because (1) it changed custody without an evidentiary hearing; (2) made no findings regarding HMS's established custodial environment or best interests; and (3) failed to hold defendant-mother to the correct evidentiary burden: clear and convincing evidence. Plaintiff-father also argued the recommendation was contrary to the consent judgment's terms, because the referee ignored the requirement the parties' agreement to change parenting time must be in writing to constitute a waiver of the established schedule. Plaintiff-father contended the recommendation was also contrary to public policy, because, under *Theroux v Doerr*, 137 Mich App 147, 149-150; 357 NW2d 327 (1984),[2] parents are encouraged to temporarily relinquish custody to protect the child's best interests. Because plaintiff-father only agreed to change parenting time to protect HMS during the COVID-19 pandemic, this decision should not be used to change custody.

The parties reiterated their arguments to the trial court at the subsequent hearing. The trial court agreed with the referee's recommendation and found it was in HMS's best interests to modify the parenting time schedule. The trial court also found there was a change of circumstance and proper cause to change custody, and defendant-mother met the *Vodvarka v Grasmeyer*, 259 Mich App 499; 675 NW2d 847 (2003), and *Shade v Wright*, 291 Mich App 17; 805 NW2d 1 (2010), thresholds. The trial court decided to schedule an evidentiary hearing. Plaintiff-father argued the trial court should not change custody before the evidentiary hearing, and asked the trial court leave the earlier order in place until the evidentiary hearing. The trial court concluded:

> Thank you, counselors. And like I said I appreciate what you have to say but the Court's going to go ahead and uphold this referee recommended order. The Court is not changing custody, the Court is modifying parenting time, this is the same schedule the parties have been exercising now for what seems like I don't know how long, the Court did inquire into the parenting time schedule that's been exercised by both parties. If [plaintiff-father] did have an issue with [defendant-mother] as far as enforcing the parenting time order from 2018, then [he] should've brought a motion to the Court, prior to this. So, the Court will go ahead and schedule an evidentiary hearing.

We granted plaintiff-father's delayed application for leave to appeal. *Stoudemire v Thomas*, unpublished order of the Court of Appeals, entered April 1, 2022 (Docket No. 360441).

---

[2] Although published decisions of this Court issued prior to November 1, 1990, are not strictly binding upon us, all published decisions of this Court are precedential under the rule of stare decisis and generally should be followed. *In re Guardianship of Bazakis*, ___ Mich App ___, ___ n 4; ___ NW2d ___ (2022) (Docket No. 358276), slip op at p 5 n 4.

## II. STANDARDS OF REVIEW

We apply three standards of review in custody cases. The great weight of the evidence standard applies to all findings of fact. A trial court's findings regarding the existence of an established custodial environment and regarding each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law. [*Vodvarka*, 259 Mich App at 507-508 quotation and citations omitted).]

The trial court's determination whether a party has demonstrated proper cause or a change of circumstances is also reviewed under the great-weight-of-the-evidence standard. *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019). "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Id.*

Similarly, "[o]rders concerning parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Shade*, 291 Mich App at 20-21. "In child custody cases, [a]n abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Id.* at 21 (quotation marks and citation omitted, alteration in original). Consent judgments are contracts which must be interpreted according to ordinary contract interpretation principles. *Andrusz v Andrusz*, 320 Mich App 445, 453; 904 NW2d 636 (2017). "We review de novo as a question of law the proper interpretation of a contract[.]" *Id.* at 452.

## III. PRINCIPLES OF LAW

"When resolving important decisions that affect the welfare of the child, the court must first consider whether the proposed change would modify the established custodial environment." *Pierron v Pierron*, 486 Mich 81, 86; 782 NW2d 480 (2010). "The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). "It is possible for a custodial environment to be established in more than one home." *Pennington*, 329 Mich App at 578. "Whether an established custodial environment exists is a question of fact that the trial court must address before it determines the child's best interests." *Butler v Simmons-Butler*, 308 Mich App 195, 202; 863 NW2d 677 (2014).

Furthermore, "when seeking to modify a custody or a parenting-time order, the moving party must first establish proper cause or a change of circumstances before the court may proceed to an analysis of whether the requested modification is in the child's best interests." *Lieberman v Orr*, 319 Mich App 68, 81; 900 NW2d 130 (2017). "[W]hat constitutes proper cause or a change of circumstances under MCL 722.27(1)(c) will vary depending on the nature of the requested amendment or modification." *Kaeb v Kaeb*, 309 Mich App 556, 570; 873 NW2d 319 (2015). A proposed change that would not alter the child's established custodial environment requires only

"an appropriate ground for taking legal action," whereas a proposed change that would alter the child's custodial environment requires a higher and more exacting finding of "appropriate grounds that have or could have a significant effect on the child's life." *Id*. at 567-572.

The nature of the change also affects the standard by which it must be shown that the change is in the child's best interests. A mere adjustment in parenting time requires the movant to "prove by a preponderance of the evidence that the change is in the best interests of the child" pursuant to *Shade*. *Lieberman*, 319 Mich App at 84. However, if a purported adjustment in parenting time would alter the child's established custodial environment, that adjustment is effectively a change in custody, mandating application of the higher clear and convincing evidence standard under *Vodvarka*. *Id*. If a trial court actually applies the correct burden of proof, it is immaterial whether the trial court styles its order as a change in parenting time or a change in custody. *Kubicki v Sharpe*, 306 Mich App 525, 539-540; 858 NW2d 57 (2014). It does not matter whether the change is styled as a change in custody or a change in parenting time. *Lieberman*, 319 Mich App at 77 n 4. Rather, the critical inquiry is whether the adjustments will "change whom the child naturally looks to for guidance, discipline, the necessities of life, and parental comfort." *Pierron*, 486 Mich at 86. A sufficiently drastic alteration in parenting time, such as relegating a parent who previously had equal parenting time to a "weekend parent," will constitute a change in custody. See *Powery v Wells*, 278 Mich App 526, 528; 752 NW2d 47 (2008).

## IV. EFFECT OF CONSENT JUDGMENT

As an initial matter, we first address plaintiff-father's foundational argument that the trial court erred by failing to enforce the parties' consent judgment. We conclude that the trial court did not violate the consent judgment.

As an initial matter, we wholeheartedly agree with the principle set forth in *Theroux* that a parent who makes a temporary sacrifice to protect a child's best interests should not thereafter be punished for doing so. *Theroux*, 137 Mich App at 149-151. We also agree, as noted above, that consent judgments are effectively contracts. *Andrusz*, 320 Mich App at 453. We therefore look to the language of the contract and, if it is unambiguous, we apply that language exactly as written, "unless the contract is contrary to law or public policy." *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 130-131; 743 NW2d 585 (2007). "In ascertaining the parameters of our public policy, we must look to policies that, in fact, have been adopted by the public through our various legal processes, and are reflected in our state and federal constitutions, our statutes, and the common law." *Rory v Continental Ins Co*, 473 Mich 457, 471; 703 NW2d 23 (2005) (quotation omitted).

As noted, the precise language at issue is:

> Parties shall continue alternating weeks, or until the further order of the court . . . The parties may mutually agree to modify the parenting plan, except that any agreement to modify is not a permanent waiver of this schedule unless specifically provided for in writing as a permanent change.

A waiver is an "intentional relinquishment of a known right." *Bailey v Jones*, 243 Mich 159, 162; 219 NW 629 (1928). The clear import of the agreement is that if a party agrees to a change in

parenting schedule for HMS, that party may withdraw that agreement at any time. The consent judgment unambiguously provides for further court orders that might affect the parenting schedule. Importantly, the consent judgment does *not* provide that an agreed-upon change in the parenting schedule cannot eventually constitute a change of circumstances. Indeed, we do not think such a provision would be legal.

The Child Custody Act has "occup[ied] the field of child custody" and sets forth important public policy. See *Van v Zahorik*, 460 Mich 320, 330-331; 597 NW2d 15 (1999). Fundamentally, the Child Custody Act provides for the best interests of the child. In the somewhat-analogous context of child support, this Court has held that although the parties may agree to pay additional support, they may not agree to restrict a parent's obligation to pay support. *Holmes v Holmes*, 281 Mich App 575, 590-591; 760 NW2d 300 (2008). Of further indirect relevance, we observe that an established custodial environment may be established even in violation of a custody order.[3] *Marik v Marik*, 325 Mich App 353, 361; 925 NW2d 885 (2018). The clear import is that, in child custody matters, the courts should generally look at the facts as they actually exist, not at what the facts ought to be, and the parties may not contract to limit the trial court's responsibilities. We conclude that a contractual provision purporting to preclude the trial court from considering any fact relevant to whether there has been a change of circumstances would be void as against public policy.

That does not, of course, mean that the trial court should ignore *why* plaintiff-father chose to permit HMS to live primarily with defendant-mother. As we discuss further below, quite the opposite is true. Nevertheless, the trial court is not prohibited from considering *the fact of* that change when considering whether there has been a change in circumstances such that an existing custody order should be revisited. We note that, contrary to plaintiff-father's argument on appeal, the referee's recommended interim order, which the trial court adopted, did not modify the parties' parenting schedule "simply because [plaintiff-father] verbally agreed to modify parenting time at [defendant-mother's] request during the unprecedented pandemic." Rather, the referee's recommended order was clearly based on *how long* that change in the parenting schedule had gone on. Although, as we discuss, the distinction is ultimately irrelevant under the totality of the circumstances, the order did not directly hold plaintiff-father's assent against him *per se*.

## V. ESTABLISHED CUSTODIAL ENVIRONMENT

We next address plaintiff-father's argument that the trial court erred by failing to make findings regarding HMS's established custodial environment. We agree. Although the trial court recognized that defendant-mother had argued that an established custodial environment existed solely with her, it never made any determination whether an established custodial environment existed with either parent.

Whether an established custodial environment exists is critical. If an established custodial environment exists and the proposed change would alter that custodial environment, the moving party "must demonstrate by clear and convincing evidence that the change is in the child's best

---

[3] As we discuss further below, we do not conclude that the parties' oral agreement to allow HMS to live primarily with defendant-mother did alter HMS's established custodial environment. We cite *Marik* here only for the principle that practical realities must be paramount.

interests." *Marik*, 325 Mich App at 362. However, if no custodial environment exists, a prior custody order may be altered merely on the basis of a preponderance of the evidence that doing so would be in the child's best interests. *Id*. at 361-362. Ordinarily, "[w]here a trial court fails to make a finding regarding the existence of a custodial environment, this Court will remand for a finding unless there is sufficient information in the record for this Court to make its own determination of this issue by de novo review." *Jack v Jack*, 239 Mich App 668, 670; 610 NW2d 231 (2000) (quotation omitted). Under the circumstances, no remand is necessary as to this issue.

There can be no serious dispute that HMS had an established custodial environment with both parents until plaintiff-father consented to allow HMS to live primarily with defendant-mother. Michigan has an important public policy favoring the return of children to custodial parents who have temporarily transferred custody in order to meet those children's needs. *Theroux*, 137 Mich App at 149-150; see also *Straub v Straub*, 209 Mich App 77, 81; 530 NW2d 125 (1995), and *Loyd v Loyd*, 182 Mich App 769, 780; 452 NW2d 910 (1990). As discussed, defendant-mother never explicitly agreed that the March 2020 change in HMS's living arrangement was due to plaintiff-father assenting to defendant-mother's request for the sake of HMS's health and safety during the COVID-19 pandemic. Nevertheless, as also discussed, defendant-mother had ample opportunity to suggest otherwise and, even on appeal, she has not done so. Plaintiff-father's previous established custodial environment may, therefore, not be deemed relinquished. As a matter of law, an established custodial environment *remains* established with both parents.[4]

## VI. NATURE OF TRIAL COURT'S ORDER

As noted above, before a trial court may even consider altering a child's established custodial environment, the moving party must establish proper cause or a change of circumstances. What constitutes sufficient proper cause or a change of circumstances varies depending on the nature of the proposed alteration. Therefore, we must first consider the nature of the change effectuated by the trial court's order.

As discussed, if a purported parenting time adjustment relegates a parent who previously had equal parenting time to a "weekend parent," the adjustment is really a change in custody. *Powery*, 278 Mich App at 528. Conversely, a parenting time adjustment that reduces one parent's overnights with a child from 209 to 182 was deemed unlikely to rise to the level of being a change in custody. *Rains v Rains*, 301 Mich App 313, 341; 836 NW2d 709 (2013). Furthermore, parenting time arrangements need not be strictly equal. *Mogle v Scriver*, 241 Mich App 192, 204; 614 NW2d 696 (2000). We recognize that, in this matter, the trial court's order essentially just formalized the status quo as it existed as of the date of defendant-mother's motion. Nevertheless, the trial court's order altered its *prior custody order*, even if it only did so on an "interim" basis. That alteration reduced plaintiff-father's parenting time from every other week to every other weekend and every Tuesday. In other words, it reduced plaintiff-father's overnights from approximately 182 overnights a year to approximately 104 overnights a year. Mathematically, the change was the equivalent of relegating plaintiff-father to being a "weekend parent." Irrespective

---

[4] Nevertheless, nothing in this opinion should be construed as a prohibition against defendant-mother proving on remand that the March 2020 change in HMS's living arrangement was due to other reasons.

of how the trial court's order was styled, it effectively changed the child's custody *from its prior custody order*. As a consequence, the more stringent standard for proper cause or a change of circumstances under *Vodvarka* applies. See *Lieberman*, 319 Mich App at 83.

The trial court adopted the referee's recommendation, which in turn concluded that defendant-mother had established proper cause or a change of circumstances "for the reasons stated on the record." On the record, the referee relied on two findings: that "the minor child has been residing seemingly primarily with [defendant-mother] for a fair amount of time," and that defendant mother "naturally ha[d] more parenting and responsibilities while [HMS] was primarily with her." These findings were consequences of plaintiff-father's agreement to permit HMS to live with defendant-mother, which, he testified, was for the sake of HMS's health and safety. Although, as noted, we do not hold that those facts may not be considered at all, they are insufficient, pursuant to *Theroux*, *Straub*, and *Lloyd*, to constitute proper cause or a change of circumstances to order a change in custody.

The trial court's order is vacated, the parties' prior custody order is reinstated, and this matter is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Kathleen Jansen
/s/ Christopher M. Murray