HOLMES v HOLMES

Docket No. 276470. Submitted October 14, 2008, at Grand Rapids. Decided December 4, 2008, at 9:05 a.m. Leave to appeal sought.

The plaintiff, Elizabeth S. Holmes, obtained a divorce from the defendant, Richard E. Holmes, Jr., in the Kent Circuit Court in 1996. The divorce judgment incorporated an agreement between the parties giving them joint legal custody of their children. The agreement also required the defendant to pay the plaintiff child support, including a percentage of any net bonus he received. Although the shared economic responsibility formula (SERF) might have applied, the parties determined the amount of child support through a calculation that used the SERF amount as only one component. Over the years, the parties moved on multiple occasions to modify the support arrangements. Eventually, the defendant sought a modification that applied the SERF and also reduced the percentage of his bonus payable as child support. The plaintiff filed a cross-motion to modify child support, alleging a change of circumstances. The court, Patricia D. Gardner, J., referred the matter to a mediator, whose recommendations included use of the SERF and a reduction of the percentage of the defendant's bonus payable as child support. The plaintiff accepted the recommendation regarding the monthly support obligation, but rejected the recommendation concerning the bonus. Following an evidentiary hearing regarding the modification of the bonus percentage, the court applied the SERF to the bonus and accepted the reduced percentage recommended by the mediator. The plaintiff appealed by delayed leave granted.

The Court of Appeals *held*:

1. The trial court did not err by concluding that a change of circumstances warranted modifying the defendant's monthly support obligation. The plaintiff alleged a change of circumstances in her cross-motion and stipulated acceptance of the mediator's recommendation regarding the monthly support amount.

2. The trial court erred by finding that it lacked the power to enforce the bonus provision in the agreement. Trial courts are obligated to use the guidelines set forth in the child support formula manual when fashioning child support orders. Because the guidelines set forth a parent's minimum support obligation,

however, a voluntarily assumed obligation to pay an amount that exceeds the minimum is not inherently objectionable. A contract enhancing a parent's child support obligation should be enforced absent a compelling reason to forbear enforcement. Continued enforcement of the original bonus provision benefits the children without violating the trial court's inherent ability to modify the child support amount if circumstances changed substantially or the support amount qualified as unjust or inappropriate under MCL 552.605(2)(d).

3. The language of the parties' agreement is clear and unambiguous. The bonus provision contains definite terms regarding its duration and lacks any reference to future adjustments or modifications. The absence of a review provision regarding the bonus percentage indicates that the parties did not intend that the percentage be modifiable. While a circuit court has the power to modify a child support award, it may not ignore an unambiguous contractual provision regarding child support.

Reversed and remanded for further proceedings.

PARENT AND CHILD — CHILD SUPPORT — MODIFICATION OF CHILD SUPPORT AWARDS.

An agreement that enhances a parent's child support obligation beyond the minimum amount required under the child support formula should be enforced absent a compelling reason to forbear enforcement.

*Steven J. Vander Ark* for the plaintiff.

*Holmes & Wiseley, P.C.* (by *Aaron D. Wiseley*), for the defendant.

Before: BANDSTRA, P.J., and BECKERING and GLEICHER, JJ.

GLEICHER, J. In this dispute regarding child support, plaintiff appeals by delayed leave granted a circuit court order granting defendant's motion to modify his child support obligation. We reverse and remand.

I. FACTS AND PROCEEDINGS

The parties married in 1988 and consented to the entry of a divorce judgment on July 15, 1996. The

parties, who are both attorneys, have two minor children. At that time of the divorce, plaintiff practiced in a small Grand Rapids law firm. She now serves as the president of her family's construction business and no longer practices law. Defendant is a partner in a large, statewide law firm.

The parties' consent judgment of divorce incorporated a document entitled "Alimony, Custody, Child Support, Parenting Time, and Property Settlement Contract" (the contract). The contract provided for joint legal custody of the children, with plaintiff receiving physical custody. Defendant's parenting time consisted of 12 overnight visits a month, or approximately 164 days a year with other vacation times included. Paragraph 7 of the contract, entitled "Child Support," is the disputed portion at the center of this appeal. It provides:

> Husband shall pay child support in the amount of One Thousand, Two Hundred Sixty-three ($1,263.00) Dollars per month (see attached calculations), which includes his portion of the payment for the children's nanny. *Further, Husband shall pay twenty-five percent (25%) of any net bonus he receives in any given year as additional child support. When the oldest child attains the age of 18 or completes high school, whichever event occurs last, this payment shall be reduced to fifteen percent (15%) of his net bonus, and shall terminate upon the youngest child's attaining the age of 18 or graduating from high school, whichever last occurs.* [Emphasis supplied.]

The parties agree that they calculated defendant's $1,263 monthly child support obligation by adding together the amount that would have been due under the standard child support guidelines in the Michigan Child Support Formula Manual (MCSFM) if plaintiff had been given sole custody ($1,697.81) and the amount calculated under the shared economic responsibility

formula (SERF)[1] ($828.25) and then dividing by two.[2] When they negotiated the contract, the parties recognized that defendant's substantial parenting time would potentially entitle him to application of the SERF. They agreed on the compromise embodied in the contract to avoid a protracted courtroom battle regarding both parenting time and child support.

Paragraph 8 of the contract, entitled "Additional Child Support Provision," addressed future child support modification:

> All child support shall be paid through Kent County Friend of the Court and shall be subject to all Friend of the Court regulations and supervisory fees. *Husband waives the right to assert shared economic participation and agrees not to introduce the shared economic concept into the support calculation for the minor children for a ten-year period.* Wife agrees that as long as Husband exercises the parenting time specified in this Agreement, the same shall be effected in the support calculation.
>
> Husband and Wife agree that support shall remain fixed for one year after the entry of the Judgment of Divorce, before it can be reviewed, and that support will be reviewed only in the event that either Husband or Wife is receiving greater compensation than at the time of the entry of the Judgment of Divorce. In no event shall child support be reduced, unless Husband is completely unemployed on a non-voluntary basis, or unless Wife's earnings increase. [Emphasis supplied.]

In 1997, the parties filed competing motions to modify defendant's monthly child support payments.

---

[1] This methodology appears in 2004 MCSF 3.05.

[2] The "attached calculations" referred to in ¶ 7 of the contract were not attached to the divorce judgment or the copy of the contract filed with the circuit court. The parties clashed regarding the formula for many years. But their current positions remain consistent with the simple mathematics described here.

Plaintiff sought a significant increase, alleging that her income declined when her law firm closed its doors and she became self-employed. Defendant advocated application of the SERF, averring that because he had 14 parenting time days a month, the SERF was more equitable. Plaintiff countered that in the contract defendant had "agreed not to assert shared economic responsibility for a period of ten years."

The circuit court increased defendant's child support payment to $1,391 a month, observing as follows in its written opinion and order:

> The issue is complicated by the fact that the judgment incorporates by reference a document entitled "alimony, custody, child support, parenting time, and property settlement contract" entered by and between the parties under date of March 16, 1996. This rather singular document addresses child support in paragraphs 7 and 8 on pages 3 and 4. Paragraph 7 establishes child support for the 2 minor children of the parties at $1263.00 per month, including child care, which figure is ostensibly based upon "attached calculations." Lamentably however, no such calculations are in fact attached to the document.

The circuit court calculated the $1,391 monthly figure through a formula of its own creation, which was more complex than simply adding the standard guidelines and SERF numbers, then dividing the total by two. The circuit court further ordered that no child support review would occur for 24 months, absent an "extraordinary change in circumstances."

On September 28, 2001, defendant filed a motion "for child support calculation pursuant to judgment of divorce." He requested that the newly assigned circuit court judge reconsider the previous judge's calculation method and instead calculate the support obligation by combining the standard guidelines amount with the SERF amount and dividing by two. Plaintiff responded

that the previously employed method constituted the law of the case. The parties also argued regarding whether the calculation would be made using defendant's "base salary" or his "income." The circuit court ruled that the parties had intended to use the formula advocated by defendant. In December 2002, the parties stipulated a monthly child support payment of $1,383.[3] Defendant continued to pay 25 percent of his net bonus as child support.

During the 10-year period described in ¶ 8 of the contract, the parties fought several contentious custody battles and filed multiple motions seeking child support modification.[4] Notably, neither party challenged the portion of the 1996 contract addressing the percentage of defendant's bonus to be paid as child support. Defendant consistently paid 25 percent of his net bonuses as child support, which in some years represented substantial, six-figure sums.

Shortly before the 10-year anniversary of the divorce judgment, defendant moved for modification of his child support obligation. Defendant contended that he could now introduce the "shared economic concept" because the 10-year period of forbearance specified in the contract would soon expire. Defendant invoked the following contract provision: "Husband waives the right to assert shared economic participation and agrees not to introduce the shared economic concept into the support calculation for the minor children for a ten-year period." Defendant averred that he had custody of the

---

[3] Plaintiff filed a delayed application for leave to appeal these rulings, and on May 8, 2003, this Court denied the application for lack of merit in the grounds presented. *Holmes v Holmes*, unpublished order of the Court of Appeals (Docket No. 246548).

[4] A 2003 custody battle also resulted in an appeal to this Court. *Holmes v Holmes*, unpublished order of the Court of Appeals, entered April 1, 2003 (Docket No. 247574).

children for 172 days a year and that the court thus had to apply the SERF. He sought a reduction of his support obligation to $636 a month, which constituted 4 percent of his average monthly income, and a commensurate reduction in the amount of the support payment deducted from his net bonus, from 25 percent to 4 percent.

Plaintiff responded that no basis existed for modifying defendant's support obligation because defendant had failed to show a "change in circumstances." Plaintiff further argued that the bonus percentage had been established in the contract and could not be modified. Plaintiff calculated that under the SERF, defendant would pay $1,134 a month and under the straight guidelines formula, he would pay $2,076.30 each month.

The circuit court referred the matter to the Friend of the Court, explaining as follows:

> The Court does find that there has been a change in circumstances presented.
>
> I am satisfied that having the ten years lapse is a basis to re-evaluate appropriate support for the two children.
>
> I'm also satisfied that it's been two years since the last review of child support.
>
> And, I'm further satisfied that based on the allegations set forth within both briefs, that there's a change in the income of both parties. And, also that the overnight stays which have been kept track by both parties in copious and voluminous notations, deserves review.

On March 31, 2006, plaintiff filed a cross-motion for modification of child support, alleging a change of circumstances that included defendant's failure to use all of his parenting time and an increase in defendant's income. On April 14, 2006, the circuit court referred the matter "for review and a recommendation to a mediator selected and agreed upon by the parties." On October 2,

2006, mediator David C. Sarnacki issued his report and recommendations, which included the following:

39. In this case, the parties' original agreement included a regular monthly support amount and a provision for additional child support in the amount of 25% of any net bonus. The 1996 support calculations showed that the regular monthly child support obligation was about 25.4% of Richard's net income.

40. Richard and his attorney (who calculated the 1996 obligation) contend that the 25% figure was deliberately set based on the percentage of obligation to net income. Elizabeth contends that she was never told this in 1996 and that she did not know how Richard selected the 25%. She merely agreed to his proposal because she knew there was a potential for large bonus income.

41. As indicated above, the method for providing additional support in the form of a percentage of net bonus income is not surprising. In fact, the figure (25%) bears far too much similarity to the actual ratio (25.4%) to be a coincidence. If there was something shocking about the percentage or including it within the child support obligation, Elizabeth's attorney—an experienced and respected divorce attorney—would have recognized it and it could have been dealt with in 1996.

42. Despite Elizabeth's contention that the bonus percentage was separate and distinct, it was included in the child support provisions, which are modifiable by law. That percentage served the parties well for 10 years. Now, with the entire obligation under review, there is no reason to ignore the new ratio of obligation to net income. The bonus percentage should reflect the child support obligation as modified.

43. **RECOMMENDATIONS**: Based upon all the information provided to this evaluator, I submit the following recommendations to this Court:

44. The effective date for modification is March 19, 2006.

45. Richard's income is $177,400.00 ($14,783.33/month).

46. Elizabeth's income is $80,425.00 ($6,702.08/month).

47. Richard's number of overnights for purposes of the Formula is 157.

48. The formula to be used is SERF.

49. The net bonus percentage is modified in accordance with the ratio of obligation to net income.

50. The calculation of the child support obligation is as follows:

Effective March 19, 2006, Defendant/Father shall pay Plaintiff/Mother for support for the two minor children, the sum of $1032.89 per month ($674.55 per month for one) or until further Order of the Court.

In addition to monthly child support, Defendant/Father shall pay Plaintiff/Mother 9.30% of any net bonus income for the care of the two minor children (6.17% of any net bonus income for one minor child).

On October 6, 2006, defendant filed a motion requesting that the circuit court adopt the mediator's recommendations. Plaintiff accepted the recommendation regarding monthly child support and agreed that defendant's parenting time consisted of 157 overnight visits a year. However, plaintiff rejected the mediator's recommendation regarding the modification of the bonus percentage. On October 13, 2006, the circuit court entered an order providing as follows:

1. Defendant's motion for modification of child support is hereby GRANTED in part and, by agreement of the parties, the Court adopts the recommendations of the mediator as follows:

a. Defendant's monthly child support obligation shall be modified effective March 19, 2006;

b. The formula to be utilized in calculating monthly child support is the Shared Economic Responsibility Formula;

c. The monthly income to be utilized in the shared economic responsibility formula is $14,783.33 per month for Defendant and $6,702.08 for Plaintiff.

d. The number of overnights for the Defendant to be utilized in the shared economic responsibility formula is 157.

e. As of the effective date of modification, Defendant's monthly child support obligation is $1,032.89 per month.[5]

2. Plaintiff's cross-motion for modification of child support is hereby DENIED.

3. That portion of Defendant's motion for modification of child support relating specifically to modification, if any, of a percentage of Defendant's net bonus shall be scheduled for an evidentiary hearing before this Court.

On January 19, 2007, the circuit court conducted the evidentiary hearing regarding the bonus percentage. Both parties testified regarding their interpretations of the contract's bonus clause. Plaintiff testified that she and defendant had agreed that she would receive 25 percent of defendant's bonus until the older child's eighteenth birthday. The bonus percentage "would then drop to 15 percent" and would remain at that level until the younger child's eighteenth birthday. Plaintiff conceded that this amount was considered child support rather than a property settlement and that child support is modifiable under Michigan law. Plaintiff nevertheless asserted, "My position is that Rich and I agreed that it would not be modifiable until [the older child] turned 18, which we can do."

Defendant contended that when they negotiated the bonus provision, he and plaintiff applied the same percentage (25 percent) to his bonus as they had to his income when calculating his monthly child support payment. He asserted that he had agreed to pay more

---

[5] This constituted a $45 increase in defendant's payments.

than the SERF required so that plaintiff would agree to allow him more overnight visits with his children, declaring, "I paid extra money to purchase time with my children and to guarantee they could stay in the home." Defendant testified that he and plaintiff had intended the bonus percentage to remain at 25 percent for 10 years and that ¶ 8 of the contract "guaranteed" that after 10 years the bonus percentage would change. He explained: "I also understood at the time that all child support agreements had to read that they continued until a child was 18 or had graduated from high school. That was standard language."

Attorney Roger Boer represented plaintiff at the time of the divorce and drafted the contract. According to Boer, the parties modeled the bonus percentages on those used by divorcing Steelcase employees because Steelcase "had a wonderful bonus plan" and the 25 percent formula for two children was "state of the art at the time that most judgments contained that." Boer asserted that when he drafted the contract, he intended that the bonus percentages "would run" until the specific events identified in the contract, the children's eighteenth birthdays. Boer, too, conceded his awareness that child support is always modifiable under Michigan law.

The circuit court ruled from the bench as follows:

> I am asked by Ms. Holmes to find that this is a contractual negotiated provision and to not modify its terms.
>
> The Court declines to be persuaded by this argument.
>
> Certainly there are many times when additional support is a negotiated, contractual, additional enforceable term, such as agreements within judgments that a parent agrees to pay for college, or in some cases where bonus amounts are also referred to in the property section and there is

specific language that although child support is reviewable, this specific term is not to be modified and was a part of the negotiated agreement.

I don't find that those clarifying terms exist in the parties' judgment of divorce. I do not find that this is a negotiated portion of a property settlement.

I do find that the bonus, as with the child support, is modifiable and that the terms contained in the judgment allow for the Court to review what modifications are appropriate.

In reviewing the extensive income information, the Court concurs with the agreement of the parties, that the application of the SERF formula is appropriate in this case.

\* \* \*

As SERF has been applied to the child support component, I also believe that the SERF application is appropriate to utilize when evaluating the bonus funds.

I concur with the observations, findings and recommendations of the skilled mediator, David Sarnacki.

The Court will utilize the same computations and order that as SERF is applied to the bonus, that 9.3 percent of Mr. Holmes' bonus be paid over annually to Ms. Holmes to assist in supplementing the child support she receives to care for the children.

Plaintiff filed a delayed application for leave to appeal, which this Court granted.

### II. STANDARD OF REVIEW

We review for an abuse of discretion child support orders and the modification of such orders. *Peterson v Peterson*, 272 Mich App 511, 515; 727 NW2d 393 (2006). However, "[w]hether a trial court properly operated within the statutory framework relative to child support calculations and any deviation from the child

support formula are reviewed de novo as questions of law." *Id.* at 516. An appellate court also reviews de novo a trial court's finding "derived from an erroneous application of law to facts." *Beason v Beason*, 435 Mich 791, 804-805; 460 NW2d 207 (1990). To the extent that the circuit court's ruling involves statutory construction, this Court also applies review de novo. *Fisher v Fisher*, 276 Mich App 424, 427; 741 NW2d 68 (2007).

The existence of a contract involves a question of law, which we review de novo. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). Contract interpretation also presents a question of law, again subject to review de novo. *Reed v Reed*, 265 Mich App 131, 141; 693 NW2d 825 (2005). A divorce judgment "entered upon the settlement of the parties . . . represents a contract, which, if unambiguous, is to be interpreted as a question of law." *In re Lobaina Estate*, 267 Mich App 415, 417-418; 705 NW2d 34 (2005).

### III. CHANGE OF CIRCUMSTANCES

Plaintiff contends that the circuit court should not have altered defendant's child support obligation absent an evidentiary hearing demonstrating a change in circumstances. In her March 31, 2006, cross-motion for modification of child support, however, plaintiff alleged a change of circumstances, including defendant's failure to use all available parenting time and an increase in defendant's income. This admission, combined with plaintiff's stipulation to accept Sarnacki's recommendations regarding defendant's monthly child support obligation, precludes her from challenging the circuit court's finding that circumstances had changed. "A party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial

court." *Czymbor's Timber, Inc v City of Saginaw*, 269 Mich App 551, 556; 711 NW2d 442 (2006) (quotation marks omitted), aff'd 478 Mich 348 (2007). "A party cannot stipulate a matter and then argue on appeal that the resultant action was error." *Chapdelaine v Sochocki*, 247 Mich App 167, 177; 635 NW2d 339 (2001). Therefore, the circuit court did not err by concluding that a change of circumstances warranted modification of defendant's monthly child support payment.

IV. GOVERNING LEGAL PRINCIPLES REGARDING CHILD SUPPORT

A circuit court's power to determine an award of child support is governed by MCL 552.605(2), which provides:

> Except as otherwise provided in this section, the court shall order child support in an amount determined by application of the child support formula developed by the state friend of the court bureau as required in section 19 of the friend of the court act, MCL 552.519. The court may enter an order that deviates from the formula if the court determines from the facts of the case that application of the child support formula would be unjust or inappropriate and sets forth in writing or on the record all of the following:
>
> (a) The child support amount determined by application of the child support formula.
>
> (b) How the child support order deviates from the child support formula.
>
> (c) The value of property or other support awarded instead of the payment of child support, if applicable.
>
> (d) The reasons why application of the child support formula would be unjust or inappropriate in the case.

This statute specifically acknowledges that under certain circumstances, a court may properly deviate from the guidelines: "Subsection (2) does not prohibit the court from entering a child support order that is agreed

to by the parties and that deviates from the child support formula, if the requirements of subsection (2) are met." MCL 552.605(3).

The 2004 MCSFM states: "Based on the estimated costs of raising children and factors like parental income, family size, and ages of children, the formula provides for appropriate support amounts in orders involving the support of children." 2004 MCSF 1.02. The 2004 MCSFM sets forth a lengthy list of potential "Deviation Criteria," including the following:

(i) One or both parents earn incomes of a magnitude not fully taken into consideration by the formula.

(j) One or both parents have varying amounts of irregular bonus income. [2004 MCSF 1.04(D)(5).]

The child support formula used by a circuit court " 'shall be based upon the needs of the child and the actual resources of each parent.' " *Ghidotti v Barber*, 459 Mich 189, 198; 586 NW2d 883 (1998), quoting MCL 552.519(3)(a)(*vi*). Our Supreme Court has repeatedly emphasized the obligation of circuit courts to use the MCSFM guidelines in fashioning child support orders. In *Burba v Burba* (*After Remand*), 461 Mich 637; 610 NW2d 873 (2000), the Supreme Court established a procedure that circuit courts must follow when deviating from the MCSFM formula. The Supreme Court directed that the court "must first state the level of child support it would have ordered had it followed the formula . . . ." *Id.* at 645. Because courts "presumptively must follow the formula," they are required "to meticulously set forth" the statutory deviation criteria and "provide an explanation of how the order deviate[s] from the formula." *Id.* at 645-646.[6]

---

[6] The divorce judgment in this case was entered several years before the Supreme Court's *Burba* decision. However, the circuit court and the

This Court strongly disfavors deviations from the child support formula premised on private agreements that *limit* a parent's obligation to pay child support. For example, in *Johns v Johns*, 178 Mich App 101, 106; 443 NW2d 446 (1989), this Court observed: "Parents may not bargain away a child's welfare and rights, including the right to receive adequate child support payments. An agreement by the parties regarding support will not suspend the authority of the court to enter a support order." (Citation omitted.) In *Ballard v Ballard*, 40 Mich App 37, 39-40; 198 NW2d 451 (1972), this Court refused to enforce a provision in a divorce judgment requiring that the custodial parent never seek modification of a child support order awarding her $2.84 a week for each child. This Court employed sweeping language in rejecting the parties' agreement: "[I]rrepsective of the agreement, the trial judge retained inherent jurisdiction to modify the judgment as to support payments upon a proper showing at any time." *Id.* at 40.

In contrast, this Court has enforced voluntary agreements to pay *additional* child support incorporated into a divorce judgment. In *Ovaitt v Ovaitt*, 43 Mich App 628, 629; 204 NW2d 753 (1972), this Court considered the power of the circuit court to enforce

> provisions in a judgment of divorce which require the husband to provide support (including college expenses) for his children after said. children reach age 21, where the challenged provision was incorporated verbatim into the judgment from a written stipulation and property settlement agreement voluntarily executed by the parties prior to their divorce[.]

---

parties freely deviated from the MCSFM guidelines throughout the first 10 years after the divorce and failed to strictly comply with the procedural rules discussed in *Burba*. Presumably, because the guidelines deviations benefited the children, the circuit court and the parties never considered that they should explain on the record the reasons for rejecting the MCSFM formula.

This Court held that a circuit court could validly exercise its discretion to enforce such provision, explaining that

> where the parties entered into an agreement that was incorporated by the court in its judgment, and the parties concede they knew at the time that the terms were not subject to performance fully within the minority of the children, it would be an invitation to chaos to hold that such provision was not enforceable. It would permit parties to divorce actions to play fast and loose with the court and with the other parties to the action by entering into agreements which they had no intention of performing. [*Id.* at 638.]

In *Aussie v Aussie*, 182 Mich App 454, 460; 452 NW2d 859 (1990), the defendant father entered into a postdivorce agreement requiring him to pay $6,000 a year toward one child's college expenses, "in return for which plaintiff waived her right to petition the circuit court 'for an increase in child support, above the current level of $75 per child, per week.' " The defendant breached the agreement, and the plaintiff filed a petition seeking an increase in child support, as well as reimbursement of the child's college expenses. The circuit court entered an order increasing the defendant's child support, but refused to enforce the postdivorce college-payment agreement. *Id.* This Court affirmed the circuit court's order for increased child support, observing that a circuit court "has the statutory power to modify orders for child support upon a showing by the petitioning party of a change in circumstances sufficient to justify a modification." *Id.* at 463. But citing *Ovaitt*, this Court reversed the circuit court's decision not to enforce the college-payment agreement, explaining that the "defendant did agree to pay the college expenses in consideration of plaintiff's agreement not to seek additional support at the time. Plain-

tiff kept her part of the bargain. As the *Ovaitt* panel concluded, failure to enforce such contracts would be 'an invitation to chaos . . . .' " *Id.* at 464.[7]

V. APPLICATION OF CHILD SUPPORT PRINCIPLES

The facts of the instant case readily distinguish it from *Johns* and *Ballard* and place it squarely alongside *Ovaitt* and *Aussie.* We hold that because the child support guidelines set forth a parent's minimum support obligation, a voluntarily assumed obligation to pay an amount in excess of the minimum is not inherently objectionable. Therefore, a contract enhancing a parent's child support obligation should be enforced absent a compelling reason to forbear enforcement. The circuit court refused to enforce the bonus provision of the agreement that the parties, both attorneys, entered into voluntarily, despite the absence of any evidence that its enforcement would create a hardship for defendant or otherwise qualify as unjust or inappropriate. The history of the parties' child support dispute illustrates that enforcement of the bonus provision served the purposes of the statutes governing child support while preserving the court's ability to modify defendant's obligations if his financial circumstances, or that of his children, were to change.

Defendant consistently contended throughout these lengthy proceedings that when he entered into the

---

[7] In *Aussie,* this Court acknowledged that in *Smith v Smith,* 433 Mich 606; 447 NW2d 715 (1989), the Michigan Supreme Court held that a circuit court lacked jurisdiction to order child support beyond the age of majority. *Aussie* distinguished *Smith* as follows: "[W]e do not read *Smith* to preclude plaintiff from enforcing a clear contract of the parties which may be of record or in the judgment in the case." *Aussie,* 182 Mich App at 464. The Michigan Legislature subsequently enacted MCL 552.16a "in response to" *Smith*'s conclusion that "Michigan law did not provide for postmajority support." *Rowley v Garvin,* 221 Mich App 699, 706; 562 NW2d 262 (1997).

contract, the SERF guidelines applied. According to defendant, because he spent more than the requisite number of overnight visits with the children, plaintiff was not entitled to utilize the "straight guidelines" formula. Defendant alleged that the parties' compromise regarding application of the SERF led to the development of the contract, specifically that he gave up on application of the SERF solely to avoid a protracted custody battle that could have resulted in a reduction of his parenting time and a consequent application of the "straight guidelines" formula.

That compromise involved payment of a significant, certain, and presumptively nonmodifiable percentage of his yearly bonus. Defendant agreed to pay a larger percentage of his bonus than he would have had to pay if the SERF were applied. Thus, the agreement negotiated by the parties required defendant to pay an amount exceeding the guidelines, which served to benefit the Holmes children and caused no demonstrable hardship for defendant during the 10 years that he paid it. Continued enforcement of the 25 percent bonus provision benefits the Holmes children without violating the court's inherent ability to modify the child support award if circumstances substantially change or the child support amount qualifies as "unjust or inappropriate" under MCL 552.605(2)(d). Accordingly, we conclude that the circuit court erred by concluding that it lacked the power to enforce the contractual bonus provision.

VI. GOVERNING CONTRACT PRINCIPLES

A contract must be interpreted according to its plain and ordinary meaning. *St Paul Fire & Marine Ins Co v Ingall*, 228 Mich App 101, 107; 577 NW2d 188 (1998). Our interpretation of contractual language is further guided by the following precepts:

Under ordinary contract principles, if contractual language is clear, construction of the contract is a question of law for the court. If the contract is subject to two reasonable interpretations, factual development is necessary to determine the intent of the parties and summary disposition is therefore inappropriate. If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous. The language of a contract should be given its ordinary and plain meaning. [*Meagher v Wayne State Univ*, 222 Mich App 700, 721-722; 565 NW2d 401 (1997) (citations omitted).]

In *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005), the Supreme Court emphasized that courts must construe unambiguous contract provisions as written. "We reiterate that the judiciary is without authority to modify unambiguous contracts or rebalance the contractual equities struck by contracting parties because fundamental principles of contract law preclude such subjective post hoc judicial determinations of 'reasonableness' as a basis upon which courts may refuse to enforce unambiguous contractual provisions." *Id.* In *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 213; 737 NW2d 670 (2007), the Supreme Court again stressed that contracts must be enforced as written: "[W]hen parties have freely established their mutual rights and obligations through the formation of unambiguous contracts, the law requires this Court to enforce the terms and conditions contained in such contracts, if the contract is not 'contrary to public policy.'" Parties may elect to include a written-modification clause in a contract, but with or without such a clause, "the principle of freedom to contract does not permit a party *unilaterally* to alter the original contract." *Quality Products & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 364; 666 NW2d 251 (2003) (emphasis in original).

"Judgments entered pursuant to the agreement of parties are of the nature of a contract." *Gramer v Gramer*, 207 Mich App 123, 125; 523 NW2d 861 (1994). A long line of case-law reflects that divorcing parties may create enforceable contracts. In *Gramer*, this Court enforced a property settlement agreement, concluding that there was "no claim of any factor such as fraud or duress" and that its language qualified as "unambiguous and unequivocal." *Id.* More recently, in *Lentz v Lentz*, 271 Mich App 465, 471; 721 NW2d 861 (2006), we enforced the parties' separation agreement, created in contemplation of their divorce, observing that "[g]enerally, contracts between consenting adults are enforced according to the terms to which the parties themselves agreed."

In *Lobaina Estate*, this Court applied the principles of *Gramer* and *Lentz* to a divorce judgment provision entitled "Support of Minor Children—Life Insurance." The provision required both parties to "irrevocably designate the minor children as beneficiaries of any life insurance policies they may have by virtue of their employment" until the end of the parties' support obligations. *Lobaina Estate*, 267 Mich App at 417. This Court enforced the provision, reasoning that "[b]ecause the judgment of divorce was entered upon the settlement of the parties, it represents a contract, which, if unambiguous, is to be interpreted as a question of law." *Id.* at 417-418. In *Krueger v Krueger*, 88 Mich App 722, 724-725; 278 NW2d 514 (1979), this Court acknowledged that although the circuit court lacked the power "to compel a party to convey property or a property interest to a third person, even a child of the parties," it could confirm a settlement regarding property interests. In *Krueger*, we explained:

> The wife took no alimony and the child support was in an amount less than that recommended by the Friend of

the Court. She gave up something she was entitled to in exchange for a benefit to her child. Under these circumstances many courts have held that the agreement embodied in the judgment will be enforced even if the court would have had no power to order the same disposition in a contested case. [*Id.* at 725.]

The Court also enforced a contested insurance agreement not linked to a child support provision, characterizing it as an "obligation, voluntarily undertaken," and subject to court enforcement. *Id.* at 726.

The contractual language here qualifies as clear and unambiguous:

> Further, Husband shall pay twenty-five percent (25%) of any net bonus he receives in any given year as additional child support. When the oldest child attains the age of 18 or completes high school, whichever event occurs last, this payment shall be reduced to fifteen percent (15%) of his net bonus, and shall terminate upon the youngest child's attaining the age of 18 or graduating from high school, whichever lasts occurs.

It contains definite terms regarding is duration and lacks any reference to future adjustments or modifications. By its terms, the agreement plainly contemplated that the 25 percent bonus payments would continue until the older child's eighteenth birthday. We reject defendant's argument that the bonus provision was modifiable because paragraph 8 permitted the circuit court to review "support" after one year. This Court reads contracts as a whole, giving harmonious effect to each word and phrase. *Royal Prop Group, LLC v Prime Ins Syndicate, Inc,* 267 Mich App 708, 719; 706 NW2d 426 (2005). Specific contractual provisions normally override general ones. *Id.*

We further reject defendant's argument that the parties intended that the original base child support percentage (25.4) would also apply to the bonus. The

25.4 base support percentage applied only during the first year of the agreement. During the next 10 years, defendant's income and bonuses fluctuated, as did his support obligation. The parallel bonus ratio did not necessarily continue during the time that the parties voluntarily abided by the support provision. Moreover, regardless of the basis for the initial calculation, the plain language of the agreement contemplates that the agreed percentages would apply until the children's eighteenth birthdays.

The circuit court recognized its authority to enforce a parent's contractual agreement to pay a child's college expenses or a similarly worded bonus provision contained in the property settlement section of a divorce judgment. The circuit court expressly admitted, "Certainly there are many times when additional support is a negotiated, contractual, additional enforceable term . . . ." Nevertheless, the circuit court refused to enforce this "negotiated, contractual, additional- . . . term" because (1) the contract lacked "specific language that although child support is reviewable, this specific term is not to be modified," (2) child support is always modifiable, and (3) "[a]s SERF has been applied to the child support component, I also believe that the SERF application is appropriate to utilize when evaluating the bonus funds." The circuit court further referred to ¶ 42 of Sarnacki's conclusions regarding the modifiability of the bonus provision:

> Despite Elizabeth's contention that the bonus percentage was separate and distinct, it was included in the child support provisions, which are modifiable by law. That percentage served the parties well for 10 years. Now, with the entire obligation under review, there is no reason to ignore the new ratio of obligation to net income. The bonus percentage should reflect the child support obligation as modified.

The absence of specific contractual language prohibiting modification of the bonus provision does not render the bonus provision unenforceable. Contracts are enforced as written, and no exception to this basic rule exists for contracts lacking a modification clause. Furthermore, the parties included a "review" provision in ¶ 8, contemplating that the monthly child support payments would be "fixed for one year after the entry of the Judgment of Divorce, before it can be reviewed, and that support will be reviewed only in the event that either Husband or Wife is receiving greater compensation than at the time of the entry of the Judgment of Divorce." The absence of a similar provision regarding the bonus percentage supports the conclusion that the parties did not intend that percentage to be modifiable. Furthermore, merely because a circuit court possesses the power to modify a child support award, it may not simply ignore an unambiguous contractual provision regarding child support.

Finally, the circuit court opined that "additional support" might constitute a "negotiated, contractual, additional enforceable term" when it is included in the "property section" of a divorce judgment. Apparently, the circuit court would have enforced the bonus provision as written if it had been labeled as part of the parties' property settlement rather than placed in a child support paragraph. We conclude that this is a distinction lacking a meaningful difference. Regardless of the bonus provision's location in the judgment, the provision is contractual, freely negotiated, and unambiguous. Therefore, it must be enforced as written.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.