# STATE OF MICHIGAN

# COURT OF APPEALS

ELIZABETH HOLMES,

       Plaintiff-Appellant,

UNPUBLISHED
December 30, 2014

v

No. 315551
Kent Circuit Court

RICHARD E. HOLMES, JR.,

LC No. 96-003184-DM

       Defendant-Appellee.

Before: M. J. KELLY, P.J., and SAWYER and HOEKSTRA, JJ.

PER CURIAM.

In this dispute over the proper interpretation of an agreement incorporated into a judgment of divorce, plaintiff, Elizabeth Holmes, appeals by leave granted the trial court's order denying her motion to enforce the judgment against defendant, Richard E. Holmes, Jr., on the ground that the provision at issue was unenforceable as a matter of law. On appeal, we conclude that the provision was unambiguous and enforceable. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS

Elizabeth and Richard Holmes were married in 1988 and had two children, Michael and Victoria. In 1996, both Elizabeth and Richard were working as lawyers. In March 1996, Elizabeth Holmes sued Richard Holmes for divorce. In that same month, Elizabeth and Richard Holmes entered into an agreement to settle alimony, custody, child support, parenting time, and the division of property. The trial court granted Elizabeth Holmes' request for a divorce and incorporated the parties' agreement into the judgment of divorce, which was finalized in July 1996. After the trial court entered its judgment of divorce, the parties returned to the court for resolution of various disputes over the years.[1]

---

[1] These disputes have resulted in several prior appeals. See *Holmes v Holmes*, unpublished order of the Court of Appeals, entered April 1, 2003 (Docket No. 247574); *Holmes v Holmes*, unpublished order of the Court of Appeals, entered May 8, 2003 (Docket No. 246548); *Holmes v Holmes*, 281 Mich App 575; 760 NW2d 300 (2008).

In January 2013, Elizabeth Holmes asked the trial court to enter an order compelling Richard Holmes to help pay for their children's college expenses as provided in the agreement incorporated into the judgment of divorce. She alleged that, although they had agreed to "participate in the children's college education, based upon their respective financial situation at the time the children attend college," Richard Holmes had refused to assist her with the payment of their son's college expenses. Elizabeth stated that she had already expended approximately $52,000 on Michael's college education and she anticipated that Victoria's expenses would be approximately $27,000 per year when she went off to college in August 2013.

In response to Elizabeth Holmes' motion, Richard Holmes argued that the agreement did not obligate him to participate in his children's college education by providing financial support. Specifically, he noted that the agreement required him to participate in his children's college *education*, which is not the same as requiring the payment of college expenses. Because he had been mentoring his son and remained in contact with him throughout his college experience, Richard argued that he had in fact participated in his son's college education, as required by the agreement. He further maintained that the reference to the Holmes family's trust and traditions did not have any financial implications; it simply referred to his "ideals for college attendance, work ethic regarding the children's assistance in paying their own way and appropriate conduct warranting involvement."

The trial court held a hearing on the motion in February 2013. After briefly hearing the parties' arguments, the trial court determined that the provision at issue was unenforceable:

> In this case, I don't find that the language is clear enough to allow the Court to enforce anything. There is absolutely no meeting of the minds as to what it means with regard to the clause, "husband and wife will participate in the children's college education". It is unenforceable in my view. I understand that there are other clauses within this paragraph that talk about a tradition of education, and I understand there is a clause that their participation, whatever that means, would be based on a respective financial situation at the time the children attend college. But, I find the provision to be unclear, lacking specificity, and unenforceable. . . .

For the reasons stated on the record, the trial court denied Elizabeth Holmes' motion in an order of March 2013. Elizabeth Holmes then applied for leave to appeal in this Court, which this Court granted.[2]

---

[2] See *Holmes v Holmes*, unpublished order of the Court of Appeals, entered October 28, 2013 (Docket No. 315551).

## II. CONSTRUING THE AGREEMENT

### A. STANDARDS OF REVIEW

This Court reviews de novo whether the trial court properly construed and applied an agreement incorporated into a judgment of divorce. *Holmes v Holmes*, 281 Mich App 575, 587; 760 NW2d 300 (2008).

### B. ANALYSIS

At the time of their divorce, more than 18 years ago, Elizabeth and Richard Holmes entered into an agreement governing every aspect of the dissolution of their marriage; the agreement included provisions governing alimony, custody, child support, parenting time, and the division of property. The parties also included, as paragraph 10 of their agreement, a provision which expressed their agreement concerning the children's higher education:

> **College Education of Children:** Husband and Wife will participate in the children's college education, based upon their respective financial situation at the time the children attend college. Both Husband and Wife understand that the Holmes grandparents of the children have placed substantial emphasis on their projected education, and the parties anticipate that the children will be educated based on the Holmes family's trusts and traditions.

Paragraph 10 is poorly drafted and, when its provisions are examined in isolation and out of context, it is plain that different persons might read it in different ways. But the "unhappy fact is that the possibility of such an ambiguity lurks in almost every written instrument devised by man." *Flajole v Gallaher*, 354 Mich 606, 609; 93 NW2d 249 (1958). Accordingly, the mere possibility that a provision can be interpreted in different ways is not sufficient to conclude that it is fatally ambiguous: the relevant question is whether the provision is equally susceptible to more than one meaning. *Lansing Mayor v Pub Serv Comm*, 470 Mich 154, 166, 680 NW2d 840 (2004). When this provision is read as a whole and in proper context, as courts must do, see *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 50 n 11; 664 NW2d 776 (2003), it is plain that the parties obligated themselves to provide financial support for their children's college education.

In the first sentence of this paragraph, Elizabeth and Richard Holmes agreed that they "*will participate* in the children's college education." Read in isolation, this phrase obligates them to participate in some way, but plainly does not obligate them to participate by paying for the children's college expenses. But this phrase cannot be read in isolation; it must be read as modified by the following clause, which provides that their participation in the children's college education must be "based upon their respective financial situation at the time the children attend college." By stating that their participation must be "based upon" their "financial situation", Elizabeth and Richard Holmes delineated the nature of participation that they were each obligated to provide and limited the extent of their obligation: they had to provide necessary financial support, but only to the extent that their financial situation permitted them to do so, as determined at the time the children actually attend college.

This understanding is further supported by the sentence following the obligation to participate financially. In the second sentence, the parties noted that the children's paternal grandparents felt strongly about college education and agreed that they anticipated that the children would "be educated based on the Holmes family's trusts and traditions." Although Richard Holmes argued before the trial court that this sentence merely expressed a hortatory goal (that the children would follow the Holmes family's traditions), the sentence refers to both "trusts and traditions." And the reference to trusts can most reasonably be understood to refer to legal trusts (formed or to be formed, given the ages of the children at the time) that would presumably be available once it was time for the children to attend college. Thus, giving this sentence its most reasonable construction, it expresses the parties' belief that the children will have outside resources available (at least from their paternal grandparents) and, therefore, may not require their parents to participate financially in their college education.

When read as a whole and in context, the parties expressed their hope that the children would have outside funds to pay for their children's college expenses, but they nevertheless agreed that they would "participate" in the children's college education, as needed, each according to his or her "respective financial situation at the time the children attend college." Because this paragraph is not equally susceptible to any other construction, this paragraph is not ambiguous and must be enforced as written. *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005).

We also do not agree that this paragraph is unenforceable because the parties failed to spell out their obligations in more detail, such as by listing the types of expenses (tuition, food, lodging, transportation, books, or any of the other myriad expenses associated with modern colleges), or by specifying the percentage or amounts each party was obligated to pay. As our Supreme Court has explained, that the parties have left some matters to be determined in the future does not make the agreement unenforceable:

> This approach is consistent with the general rule of contract that, where the parties have left open some matters to be determined in the future, enforcement is not precluded if there exists a method of determining the terms of the contract either by examining the agreement itself or by other usage or custom that is independent of a party's mere "wish, will and desire." An enforceable agreement may be found "even though the determination is left to one of the contracting parties [as long as] he is required to make it 'in good faith' in accordance with [an] existing standard or with facts capable of objective proof." [*State Bank of Standish v Curry*, 442 Mich 76, 89; 500 NW2d 104 (1993), quoting 1 Corbin, Contracts, § 95, p 402.]

Here, the parties recognized that they had no way to know what their own financial situation would be like when the children were ready for college. Likewise, they had no way of knowing what their children's financial needs would be. The children might have had scholarships or grants sufficient to pay for college and might even have been in a position to pay for their own college education. It, therefore, was entirely reasonable for Elizabeth and Richard Holmes to agree to provide financial support to their children, as needed, and each according to his or her financial situation. The fact that the children's needs and the parties' financial situation had to be determined at some future point did not render this provision unenforceable.

-4-

Both the children's needs and the parties' ability to participate financially are outside any one party's mere wish or desire and can be readily ascertained using common methods. *Id.* Accordingly, the parties can mutually agree on the needs and the ability of each party to participate financially or, if the parties cannot agree, the trial court can hold a hearing to determine the actual amount of the children's financial needs and the amount that each parent can reasonably provide given his or her financial situation.

## III. CONCLUSION

The trial court erred when it determined that paragraph 10 of the parties' agreement was ambiguous and unenforceable. When given its most reasonable construction, the parties agreed to provide their children with financial assistance, as needed, and each according to his or her financial ability. Because these terms were unambiguous and provided a reasonable framework for identifying and enforcing the obligation, the trial court should have enforced the agreement. *Rory*, 473 Mich at 468.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. As the prevailing party, Elizabeth Holmes may tax her costs. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Joel P. Hoekstra