# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
October 11, 2018

*In re* C. D. OWENS, JR., Minor.

No. 343013
Saginaw Circuit Court
Family Division
LC No. 08-031612-NA

Before: CAVANAGH, P.J., and MARKEY and LETICA, JJ.

PER CURIAM.

Respondent-father, C. Owens, Sr., appeals as of right the trial court's order terminating his parental rights to the minor child pursuant to MCL 712A.19b(3)(c)(*i*) and (g).[1] We affirm.

Although respondent argues that the trial court erred in finding that a statutory ground for termination was established by clear and convincing evidence, we conclude that this issue is waived because respondent's counsel conceded below that a statutory ground had been proven. Specifically, respondent's counsel stated:

> Needless to say, your Honor, I think the Prosecuting Attorney pointed out and I'm very much aware that this Court is aware of the statutory grounds hearing and given my client's incarceration, there's no doubt that the statutory grounds have been proven.

By stipulating to the existence of a statutory ground for termination, respondent has waived appellate review of any claim relating to the existence of a statutory ground for termination. "A party cannot stipulate a matter and then argue on appeal that the resultant action was error." *Holmes v Holmes*, 281 Mich App 575, 588; 760 NW2d 300 (2008) (citation omitted). "This waiver extinguishes any error and precludes [respondent] from raising the issue on appeal." *People v Carter*, 462 Mich 206, 209; 612 NW2d 144 (2000).

---

[1] The court also terminated the parental rights of the child's mother, but she has not appealed that decision and is not a party to this appeal.

Respondent also argues that the trial court erred in finding that termination of his parental rights was in the child's best interests. We disagree. We review for clear error a trial court's finding that termination of a respondent's parental rights is in a child's best interests. *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015) (citation omitted). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). Whether termination of parental rights is in a child's best interests is determined by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). Factors to be considered include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). A court may also consider whether it is likely "that the child could be returned to her parents' home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

The trial court based its best-interest decision on the relationship between the child and his grandparents, with whom the child was residing, and the court's finding that the grandparents' home provided the child with stability and permanence. The court noted that the child's therapist and others had agreed that the child did not want to be removed from his grandparents' home and that when the security and stability of that home is threatened, the child becomes anxious and fearful. The court also noted that the child's therapist opined that removing the child from the structured, reassuring, loving home of his grandparents would be traumatic and that remaining in the home would be in the child's best interests. The court agreed that respondent and the child shared a bond, but they had only communicated by phone for the past 16 months and it found that any bond did not outweigh the child's need for safety, stability, and permanency. Moreover, the court noted that the child's bond with his grandparents was also strong, and that they had provided him with love and care.

The trial court also specifically considered the child's best interests in recognition of the fact that his placement with relatives weighed against termination. See *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). The court noted that the child had expressed a desire to remain with his grandparents, but had also expressed an interest in continuing to have a relationship with respondent. The court found that respondent's parents "could continue to protect [the child] while allowing contact" and indicated that they wished to do so. The court acknowledged respondent's argument that it would be emotionally harmful to terminate respondent's parental rights and that a guardianship would be in the child's best interests, but found that this argument was refuted by the therapist's testimony that removing the child from his current home would be traumatic. The court observed that a guardianship would create a risk of uncertainty, and found that the child "deserves stability and permanency which would not be provided by a guardianship."

It is clear from the testimony that respondent and petitioner wanted the child to remain with his grandparents while respondent was incarcerated, and that the child needed stability and permanence. The parties presented competing testimony regarding the advantages and disadvantages of a guardianship compared to termination coupled with adoption. The trial court's decision to terminate respondent's parental rights in lieu of pursuing a guardianship is supported by the caseworker's testimony discussing the more unsettled nature of a guardianship, particularly in recognition of the child's age and the possible ramifications of future challenges to a guardianship. The caseworker also testified that adoption, compared to a guardianship, would lead to greater financial stability for the child with respect to "things such as financial benefits or security, insurance, just a lot of – of things like that." In addition, the trial court observed that respondent's continued incarceration itself brought a measure of instability for the child. Respondent could potentially remain incarcerated until September 2025, and it is speculative whether he would be released earlier and, if so, when. Respondent had already been incarcerated for more than half of the child's life. The trial court also observed that respondent's parents were committed to ensuring that the child would continue to have a relationship with respondent, as well as with the child's mother, as long as it was safe to do so. In light of these considerations, the trial court did not clearly err in finding that termination of respondent's parental rights, as opposed to a guardianship, would serve the child's best interests.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Anica Letica