*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHANA BRENDEL, formerly known as SHANA MORRIS,

        Plaintiff-Appellee,

v

BRIAN MORRIS,

        Defendant-Appellant.

FOR PUBLICATION
January 12, 2023
9:00 a.m.

No. 359226
Livingston Circuit Court
LC No. 19-054406-DM

Before: GLEICHER, C.J., and K. F. KELLY and LETICA, JJ.

GLEICHER, C.J.

Courts are permitted to modify child support orders whenever changed circumstances demand, even if the child support award was negotiated as part of a consent judgment of divorce. Here, the parties agreed to a one-time lump-sum child support payment in the consent judgment of divorce. Before the payment could be made, the recipient stopped exercising most of his parenting time. This change of circumstances warranted review of the child support award. The circuit court agreed with this principle but cited other grounds for granting the relief requested. We affirm for the reasons stated in this opinion.

## I. BACKGROUND

Shana and Brian Morris entered a consent judgment of divorce in July 2020. At that time, the parties' two children were 16 and 14 years old.[1] The consent judgment provided for equal parenting time. Under the Michigan Child Support Formula (MCSF), Shana was required to pay Brian $1,051 in monthly child support. In lieu of monthly payments, the parties agreed that Shana would transfer $100,000 from one of her retirement accounts to Brian. Consistent with this agreement, ¶ 6 in the "custody, parenting time, and support" section of the consent judgment states:

---

[1] The couple's eldest child has since reached the age of majority.

See attached Uniform Child Support Order [UCSO]. The parties acknowledge, and as reflected in the [UCSO] Deviation Addendum, and the Settlement Agreement between the parties dated March 20, 2020,[2] Wife has prepaid Husband $100,000 from her 401K as outlined in paragraph 19 in lieu of any claim he may currently have or have in the future for child support from Wife to Husband.

Paragraph 19 falls within the property division section of the consent judgment. It lists the various pensions and retirement plans each party holds. It states, "Out of Wife's Fidelity PepsiCo Savings Plan, $100,000 shall be transferred to Husband by way of a Qualified Domestic Relations Order ("QDRO") as outlined in paragraph 6. Husband shall pay for the cost of drafting the QDRO." The UCSO deviation addendum attached to the judgment further provides, "Wife has transferred $100,000 in retirement funds to Husband in full satisfaction of any claim he may have to the receipt of child support," and that "$100,000 in retirement funds were transferred to Husband from Wife in full satisfaction of any claim to child support."

Although the documents indicated that Shana had already transferred $100,000 to Brian, that transfer had not been completed.[3] And it soon became clear that the equal parenting-time arrangement would not go as planned. The children were living with their mother fulltime and spent "maybe one overnight per month" with their father. Shana waited to seek any relief "to see if the children would eventually visit with their father and if [Brian] would insist on enforcing the parenting time schedule set forth in the Judgment." Neither occurred.

Seven months after entering into the consent judgment of divorce, Shana filed a "motion for relief from judgment and child support." Citing MCR 2.612(C)(1)(b), Shana characterized the failed parenting-time arrangement as newly discovered evidence that negated her child support obligation under the MCSF. "Had it been known at the time of entry of the Judgment of Divorce that [Brian] would effectively have no parenting time, [Shana] would not only have not agreed to a lump sum transfer of retirement funds in lieu of child support, but would have required [Brian] to pay child support" to her. In addition to setting aside the $100,000 transfer provisions in the divorce judgment, Shana requested that the court recalculate the child support award based on her fulltime custody of the children.

Brian challenged Shana's request for relief, but did not claim that he had exercised his parenting time and did not seek to enforce the parenting-time provision in the divorce judgment. Rather, Brian contended that the $100,000 transfer was part of the property settlement. He asserted that the court was bound by this division reached through fair negotiation. Supporting that the one-time transfer was part of the property division and not in lieu of child support, Brian contended, was that a parent cannot bargain away a child's right to future financial support. "Provisions that attempt to put a ceiling on child support available in the future are unenforceable and misleading," Brian argued. In any event, Brian asserted, a motion for relief from judgment was the wrong tool for seeking modification of a child support order. But no motion to modify

---

[2] The settlement agreement is not part of the lower court record.

[3] At the Friend of the Court (FOC) hearing, Brian's counsel stated that the pandemic "slow[ed]" the QDRO process.

child support would eliminate Shana's separate duty under the property settlement to transfer $100,000 to him, he insisted.

Shana responded that she was willing to stipulate that the challenged provision in the judgment of divorce was unenforceable and void. The parties' child support obligations would then need to be recalculated based on the change in circumstances. If the court found the challenged provision enforceable, Shana urged the court to exercise its power under MCL 552.17 to modify the order. Shana further challenged Brian's characterization of the $100,000 transfer as part of the property division, pointing out that the plain language of the consent judgment and UCSO deviation addendum provided that the one-time transfer was in lieu of child support.

A Friend of the Court (FOC) referee conducted a hearing. In the referee's report and recommendation, the referee noted that ¶ 6 of the consent judgment "does outline the transfer" and referred to the deviation addendum to the UCSO. The referee continued, "MCR 3.211(D)(1) provides that the terms of the UCSO shall govern if the terms of the judgment or order conflict with the [UCSO]." The UCSO deviation addendum indicated that the $100,000 transfer had already occurred. "While the deviation addendum indicates that the transfer occurred, [Shana's] counsel explained that the transfer has not occurred due to the time required to prepare a QDRO." The referee found "a sufficient change in circumstances to review child support," as Shana claimed the children were living almost exclusively with her. But pursuant to MCL 552.603, any recommended change in the support order could be prospective only. The referee agreed with Brian's position that the parents could not bargain away the children's future right to support, but noted that they had reached a settlement to ensure adequate support into the future. The courts were bound by that agreement. The proper method to attack that settlement provision was through an appeal of the divorce judgment, not in a collateral attack to the child support order, the referee ruled:

> By failing to appeal the original judgment of divorce, [Shana] has effectively stipulated her consent to its provisions, including the original determination of child support. [Shana's] agreement to pay [Brian] is clear and documented both in the JOD and UCSO. Because the transfer has not occur[red] does not, in this Referee's opinion, invalidate the agreement reached by the parties.

Shana objected to the FOC recommendation. The crux of her argument was that Brian did not follow the terms of the consent judgment as he failed to exercise parenting time. This justified Shana's request for relief from the child support terms, which required a one-time transfer of $100,000. Shana argued that relief was warranted under MCR 2.612(C)(1)(c) because Brian negotiated the child support award while not intending to exercise equal parenting time, thereby defrauding the court. Alternatively, Shana contended that she was entitled to relief under MCR 2.612(C)(1)(f), a catch-all provision, as the change in parenting time rendered the child support award unjust and inequitable.

Not appreciating that the circuit court's review would be de novo, Brian complained that Shana merely "rehash[ed] the same arguments" considered and rejected by the FOC. Brian then focused on language in the judgment and UCSO deviation addendum indicating that the $100,000 transfer had already been made. This, he claimed, prevented the court from granting prospective relief. Further, Brian noted, the language of the judgment did not indicate that the transfer was

contingent on Brian exercising equal parenting time. Shana's only recourse was to transfer the funds and then seek child support from Brian going forward.

The circuit court conducted a de novo hearing to consider Shana's objections. The court agreed that consent divorce judgments are contractual in nature and must be enforced as negotiated. "[I]n this situation, it is clear from the language [of the judgment] that that $100,000 was for child support," the court ruled. Yet, Brian had not exercised his parenting time with the children to warrant the award of any child support amount. Accordingly, the court found the motion for relief from judgment supported. The court relied on MCR 2.612(C)(1)(c) and (f), finding that at a minimum, extraordinary circumstances justified setting aside the judgment to achieve justice. The court explained, "I don't see how [Brian's] substantial rights can be detrimentally affected by him not receiving child support for the children that he didn't care for." The court also referred the matter to the FOC to recalculate the child support award given the actual custody arrangement.

The circuit court subsequently entered an order providing that Shana was "not required to transfer $100,000 to" Brian and referring the matter to the FOC for recalculation of the parties' child support obligations retroactive to the date Shana filed her motion.

Brian filed a delayed application for leave to appeal, which this Court granted. *Brendel v Morris*, unpublished order of the Court of Appeals, entered March 23, 2022 (Docket No. 359226).

## II. DISCUSSION

Brian continues to argue that the one-time $100,000 transfer is part of the property settlement, not a child support award. A consent judgment is treated as a contract and is interpreted as such. We interpret contracts according to their plain language and enforce them as written. *Laffin v Laffin*, 280 Mich App 513, 517; 760 NW2d 738 (2008). Paragraph 6 is located in the "custody, parenting time, and support" section of the consent judgment. It expressly provides that Shana's transfer of $100,000 is "in lieu of any claim [Brian] may currently have or have in the future for child support from" Shana. Paragraph 6 refers the reader to the attached UCSO deviation addendum, which twice states that the transfer is "in full satisfaction of any claim to child support." These provisions could not be clearer—the $100,000 transfer is child support.

Paragraph 19 of the divorce judgment does not transform the transfer into a property settlement. This provision is within the property division section of the judgment. It awards each party their separate retirement accounts and lists those accounts for reference. This provision then clarifies that Shana is required by ¶ 6 to transfer $100,000 from one of the listed accounts to Brian using a QDRO. This language does not equate to a property settlement. It merely explains that the child support transfer required by ¶ 6 will be effectuated through a transfer from Shana's property. Logically, the drafters of the agreement likely understood that because a QDRO was going to be used to pay the child support, the funds *had* to come from a retirement account. Because the parties' retirement accounts were listed within the "property" section of the consent judgment, it made sense for the judgment to reference the QDRO in that section, as well as within the "custody, parenting time, and support provisions" section.

-4-

Our legal determination that the $100,000 transfer is child support removes a leg of support from many of Brian's remaining challenges. Brian repeatedly relies on the principle that a court may not modify an unambiguous contract reached after fair negotiation to support that the $100,000 transfer requirement must be enforced. See *Laffin*, 280 Mich App at 517 ("[C]onsent judgments are final and binding upon the court and the parties, and cannot be modified absent fraud, mistake, or unconscionable advantage."). However, "child support agreements entered in divorce actions *always* remain modifiable, depending upon changed circumstances." *Crego v Coleman*, 463 Mich 248, 256; 615 NW2d 218 (2000) (emphasis added). See also MCL 552.17. Accordingly, even if the parties to a divorce negotiate their own child support arrangement and memorialize it in a consent judgment, that award remains modifiable.

Brian claims that the consent judgment does not make the $100,000 transfer contingent on his exercise of parenting time. However, the transfer requirement clearly was a child support award, and the consent judgment provided for equal parenting time of alternating weeks. The purpose of child support is to ensure that a child's needs are met while in the recipient's care. See *Milligan v Milligan*, 197 Mich App 665, 667; 496 NW2d 394 (1993). The amount of child support to be awarded must be calculated using the MCSF. MCL 552.605(2). The number of overnight visits exercised by a parent is a critical factor in determining his or her child support obligation. See 2021 MCSF 3.03. Where one parent exercises only 12 overnight visits in a year and the other 353, the distribution of financial obligation will be much different than if the parents share week on/week off parenting time.

Brian contends that the $100,000 award cannot be modified because the consent judgment and UCSO deviation addendum state that the transfer already occurred and child support orders cannot be modified retroactively absent very limited circumstances. MCL 552.603(2). Despite the use of the past tense in the judgment and addendum, the referenced $100,000 transfer had not yet occurred when the parties' penned their signatures, and they both knew it. The delay appears to be a result of the COVID-19 pandemic and was not the fault of either party. Both parties understood at signing that the transfer would occur in the future. And as a future child support payment, the award was modifiable.

Brian also challenges the procedural method Shana employed to contest the $100,000 transfer provisions. Shana moved for relief from judgment pursuant to MCR 2.612(C)(1). She initially cited subsection (b), characterizing Brian's failure to exercise parenting time as newly discovered evidence. Shana subsequently cited subsection (c) (fraud or misrepresentation) and (f) ("Any other reason justifying relief from the operation of the judgment.") as additional grounds for relief. Shana also requested that the court refer the matter to the FOC for recalculation of the parties' child support obligations based on the correct number of overnights with each parent. Although Shana did not label her pleading as a motion to modify child support, that was the relief she sought. "Courts are not bound by the labels that parties attach to their claims," *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 691; 822 NW2d 254 (2012), "because this would exalt form over substance." *Johnston v Livonia*, 177 Mich App 200, 208; 441 NW2d 41 (1989). "Rather, courts must consider the gravamen of the complaint or motion based on a reading of the document as a whole." *Lieberman v Orr*, 319 Mich App 68, 77 n 4; 900 NW2d 130 (2017). Ultimately, the trial court was not required to find any ground to grant relief from judgment under MCR 2.612(C)(1) as Shana separately alleged and supported grounds to modify the child support award.

Trial courts have discretionary authority to modify child support awards. *Holmes v Holmes*, 281 Mich App 575, 586; 760 NW2d 300 (2008). MCL 552.17(1) permits the modification of a child support order "as the circumstances of the parents and the benefit of the children require." MCL 552.517(1)(b) permits parents to make a written request for review of a child support order. "Reasonable grounds to review" a child support order include "[t]emporary or permanent changes in the physical custody of a child that the court has not ordered." MCL 552.517(1)(f)(*i*). Shana established that circumstances had changed since entry of the consent judgment and UCSO deviation addendum. The parties had anticipated sharing equal parenting time, justifying an award of child support from Shana to Brian to ensure the children's needs were met in his care. In reality, Brian exercised minimal parenting time. The existing child support order diverted funds away from the primary custodian that should be available for the children's care. Modification was required to benefit the children following this change in circumstances.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Anica Letica