*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MARTINEZ/PERALEZ, Minors.

UNPUBLISHED
February 06, 2026
10:24 AM

No. 376197
Saginaw Circuit Court
Family Division
LC No. 25-000016-NA

Before: O'BRIEN, P.J., and MURRAY and LETICA, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to his two adopted minor children, AM and CP, claiming that the trial court clearly erred in finding that there were sufficient grounds to terminate his parental rights and that doing so was in the children's best interests. We affirm.

## I. FACTS

In 2019, then 60-year-old respondent, who was a neighbor, adopted the children after their biological parents' rights were involuntarily terminated. In September 2024, a Saginaw County Circuit Court judge sentenced respondent to prison for three counts of possession of child sexually abusive material, MCL 750.145c(4)(a), and three counts of using a computer to commit a crime, MCL 752.796(1); MCL 752.797(3)(d). Respondent's earliest parole eligibility date is March 7, 2026; however, his maximum release date is September 7, 2031. As a result of his convictions, respondent will be required to register under the Sex Offender Registration Act, MCL 28.721 *et seq*.

In April 2025, petitioner, the Department of Health and Human Services, filed a petition to remove the children from respondent's custody. The petition alleged that respondent failed to provide proper care and custody by permitting the children's biological mother, whose parental rights were involuntarily terminated in 2018, to care for the children during his incarceration. Further, respondent failed to execute any documents granting her the legal authority to act on behalf of the children. Moreover, in January 2025, the children's biological mother was hospitalized, and, as of April 2025, she was on a ventilator and unresponsive.

-1-

On February 5, 2025, respondent identified three potential relatives who might care for the children to an investigator who worked for Children's Protective Services (CPS). With CPS' assistance, respondent executed a power of attorney, appointing one of those relatives as the children's attorney-in-fact.

On March 3, 2025, that relative reported that she could not provide long-term care for the children because of her health issues. Later that month, that relative allowed the children to stay with another relative, a cousin, who reported that she would need financial assistance from the state in order to care for them.

In the interim, CPS received a referral alleging that respondent had sexually abused AM. The children participated in forensic interviews. AM disclosed that respondent had sexually abused her for years. Respondent's abuse included sexual touching, digital penetration, and cunnilingus. Additionally, AM saw videos of people, who were "kind of young, but not like kids," engaging in sex on respondent's computer.

CP also disclosed that he saw images of naked people, unknown to him, on respondent's television and that respondent took pictures of his cousins. CP reported that respondent spoiled AM, that AM would sit on respondent's lap, and that, on one occasion, respondent had gone into AM's room and closed the door.

Petitioner asked the trial court to enter an order reflecting that reasonable efforts to preserve and reunify the family were not required because of aggravated circumstances. See MCL 722.638. Petitioner further sought to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*) (sexual abuse with a foreseeable risk of future harm), and (k)(*ii*) (criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate).

At the preliminary hearing, the trial court authorized the petition. It further determined that reasonable efforts were not required because of the aggravating circumstances involved and it ordered respondent's parenting time to be suspended.

During a hearing held on May 19, 2025, the parties reported that they had reached a resolution. More specifically, respondent would admit to certain allegations in the amended petition and plead no contest to other allegations due to potential criminal or civil liability. Respondent would also stipulate that grounds to terminate his parental rights existed under MCL 712A.19b(3)(b)(*i*) and that it was in the children's best interest to terminate his parental rights.

After respondent made certain admissions under oath, the CPS investigator was called to establish a factual basis for the no-contest portion of respondent's plea. The CPS investigator testified that AM had suffered emotional trauma because of her relationship with respondent and that the children had reported an irrevocable breakdown in the father-child relationship. After determining that respondent had made a knowing, understanding, and voluntary plea establishing a statutory ground under MCL 712A.2(b)(2) by a preponderance of the evidence, the court assumed jurisdiction over the children.

Addressing the voluntary termination aspect of the hearing, respondent, who remained under oath, testified that he was 65 and had attended college for one year. Respondent was not under the influence and wanted to voluntarily terminate his parental rights to the children. The

court explained the parental rights that respondent would be giving up, including visiting with the children, receiving their earnings, and inheritance consequences as well as being consulted on the children's education and medical treatment. Respondent affirmed that he understood he would be giving up his parental rights by executing the voluntary termination. He also understood that he would not have any right to know the children's whereabouts. Respondent had time to discuss the option of giving up his parental rights with his attorney and no one had coerced, tricked, threatened, or promised him anything to execute the voluntary termination. Respondent had contemplated this decision and made it of his own free will. Respondent recognized that he would have no right to change his mind, that his decision would be irreversible, and that it would last a lifetime. The court further explained that adoption records were closed, but that it might release them under certain circumstances. And the court explained what information respondent could make available or deny access to as well as the processes involved. Finally, respondent affirmed his belief that it was in the children's best interest for his parental rights to be terminated.

Thereafter, the trial court asked the children's lawyer-guardian ad litem (L-GAL) why termination of respondent's parental rights was warranted, as opposed to a guardianship, when the children were placed with a relative. She explained that both children "unequivocally expressed that they do not desire to have a parent[-]child relationship with" respondent. Instead, they needed "to create additional separation to protect their own health and wellbeing. . . ."

The trial court concluded that there was clear and convincing evidence that a statutory basis existed for terminating respondent's parental right to the children, namely MCL 712A.19b(3)(b)(*i*) as the parties had stipulated. The court further found that termination was in the children's best interest.

On May 19, 2025, the trial court entered an order of adjudication consistent with its earlier findings. The court further stated that respondent "executed a voluntary termination of parental rights following his plea to jurisdiction." On the same day, the trial court also entered an order terminating respondent's parental rights, finding that there was clear and convincing evidence to support the statutory basis and that it was in the children's best interests.

Three weeks later, respondent filed a letter with the trial court, requesting an appeal. Respondent asked to change "the wording" so that he would "be [a]ble to reco[n]cile with [his] kids o[n]ce [he was] released." And respondent now asserted that his attorney "lied," "did [n]ot tell [him] [w]hat was going to happe[n] or tell [him] [an]y of the questions that were goi[n]g to be [a]sked." Respondent added that "[t]here was [n]o time to . . . set up [a] defe[ns]e of the . . . questio[n]s" and that his attorney had "told [him] what [he] had to say." This appeal followed.

## II. ANALYSIS

### A. COURT'S FINDING THAT THERE WERE SUFFICIENT GROUNDS TO TERMINATE RESPONDENT'S PARENTAL RIGHTS

"Generally, to terminate parental rights, a trial court must find that a statutory ground for termination has been established by clear and convincing evidence and that termination is in the best interests of the children." *In re Pawloski*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 372145); slip op at 4, order scheduling oral argument ___ Mich ___; 25 NW3d 671

(2025) (quotation marks, citations, and brackets omitted). "Thus, before parental rights may be terminated under the juvenile code, the court must make findings of fact, state conclusions of law, and identify the statutory basis for the order." *Id.* "However, a respondent can consent to termination of [his] parental rights under the juvenile code, in which case the judge need not announce a statutory basis for it." *Id.* "To be valid, a release of parental rights must be knowing and voluntary." *Id.*

On appeal, respondent initially argues that the trial court clearly erred in finding that a statutory basis for termination of his parental rights was established by clear and convincing evidence. The record below, however, reflects that the parties stipulated to the existence of a statutory ground for termination, namely, MCL 712A.19b(3)(b)(*i*). It provides:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (b) The child or sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home. [*Id.*]

By stipulating to the existence of a statutory ground for termination, respondent waived appellate review of his claim that the statutory basis was not established by clear and convincing evidence. "A party cannot stipulate to a matter and then argue on appeal that the resultant action was error." *Holmes v Holmes*, 281 Mich App 575, 588; 760 NW2d 300 (2008) (quotation marks and citation omitted). See also *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011) ("Respondent may not assign as error on appeal something that [he] deemed proper in the lower court because allowing [him] to do so would permit respondent to harbor error as an appellate parachute.")

Regardless, we will briefly address respondent's arguments on appeal, even though we conclude that none of them entitle respondent to appellate relief.

## 1. RESPONDENT'S ABSENCE DURING THE PRELIMINARY HEARING

Respondent asserts that his due process rights were violated when the trial court proceeded with the preliminary hearing in his absence. Respondent also contends that because the court did not advise him of his appellate rights in open court, although it sent him written notice of them, "it is possible he would have made other decisions at the time for trial."

These issues are unpreserved because they was not raised below. In termination cases, unpreserved issues are reviewed for plain error affecting substantial rights. *In re Pawloski*, ___ Mich App at ___; slip op at 4 (quotation marks and citation omitted). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.*; slip op at 4-5

(quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). The asserting party "bears the burden of persuasion with respect to prejudice." *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 70 (2020) (quotation marks and citation omitted).

"Procedural due process requires notice and a meaningful opportunity to be heard before an impartial decision-maker." *In re TK*, 306 Mich App 698, 706; 859 NW2d 208 (2014). In this case, notice was given and arrangements were made for respondent, who was incarcerated, to be present via Zoom during the preliminary hearing scheduled to begin at 3:30 p.m. on April 9, 2025. But, when the trial court called the case at 4:22 p.m., it noted respondent's absence after it brought his Zoom back into the courtroom. The court continued with the hearing, stating that if respondent rejoined, it would provide him with a summary of what had transpired in his absence. But, if respondent failed to rejoin, the court asked respondent's attorney to "contact . . . him to explain what occurred in this proceeding as well as to explain his trial rights along with his appellate rights."

Respondent's attorney was present at the preliminary hearing and confirmed that she had had the opportunity to review the petition with respondent "in depth." Thereafter, counsel and the children's L-GAL waived the reading of the petition. The court then asked petitioner to put on proofs solely as to Native American heritage and military service, which it did by calling the CPS investigator to testify. Respondent's attorney and the children's L-GAL had no additional questions for the witness and they waived proofs related to probable cause. The trial court also inquired whether it was respondent's intent to waive the probable cause determination and counsel represented that it was. Counsel also stated that respondent was "not contesting" the children's removal and added that "[w]e [have] no objections to parenting time being suspended at this time."

In this case, there is no explanation for respondent's absence from the Zoom hearing room at the prison; however, even assuming that there had been a technical violation of his right to be present at the preliminary hearing, he has not shown that the result of the of the proceedings would have been any different. Respondent does not dispute that he was otherwise able to participate in the remaining hearings, including the adjudication and voluntary termination. Thus, this case is distinguishable from *In re Mason*, 486 Mich 142, 155; 782 NW2d 747 (2010), where reversal of a trial court's termination order was required when the respondent-father had not participated at all in "the crucial, year-long period during which the court was called upon to evaluate the parents' efforts and decide whether reunification of the children with their parents could be achieved." Indeed, the father in *Mason* "was practically excluded from almost every element of the review process[.]" *Id.* That is simply not true here. As just discussed, respondent participated in the remaining proceedings, respondent had in-depth pre-preliminary hearing discussions with his attorney about the petition, and respondent's attorney presented respondent's positions on the issues addressed during the preliminary hearing. Accordingly, respondent has not established that he was prejudiced by his unexplained absence during the recorded portion of the preliminary hearing.

Moreover, respondent's argument that he might have made other decisions at the time of trial had his appellate rights been read to him at the conclusion of the preliminary hearing is speculative. Although it is true that the trial court did not advise respondent of his appellate rights

during the preliminary hearing, it asked respondent's attorney to do so and it noted on the record that respondent's appellate rights were included in the order entered after the preliminary hearing. The record also contains an advice of rights form that was mailed to respondent, explaining his ability to appeal the children's removal, which he could have discussed with his attorney at any time.

## 2. RESPONDENT'S JURISDICTIONAL PLEA AND VOLUNTARY TERMINATION OF HIS PARENTAL RIGHTS

Respondent also contends that the trial court erred in accepting his plea and the release of parental rights because they were not made knowingly or voluntarily. We disagree.

Addressing respondent's plea, respondent recognizes that many of his rights were explained to him, but contends that he was not advised that he had 21 days to appeal until after the voluntary termination. Our review of the transcript reflects that the trial court fully complied with the requirements of the plea-taking rule. See MCR 3.971(B)(1)-(8). And, as already discussed, the trial court mailed respondent information about his appellate rights after the preliminary hearing.

As to the voluntary termination of respondent's parental rights, respondent asserts that a "parent must fully understand his options in advance" and that by filing the instant appeal he "is indicating that he was not comfortable with the decision which he made that day and did not want to voluntarily terminate his parental rights." On this record, we conclude that respondent is not entitled to relief.

The information that respondent contends should have been conveyed to him was that MCL 712A.19a(6)(a)[1] establishes that even where grounds for termination of parental rights exist, "initiation of termination proceedings is not required when the children are 'being cared for by relatives,' " quoting *In re Mason*, 486 Mich at 162. Unlike *Mason*, however, regardless of relative placement, the instant case involved aggravating circumstances, namely, respondent's sexual penetration of AM. See MCL 722.638(1)(a)(*ii*). Thus, the law mandated that petitioner request termination of respondent's parental rights and that petitioner not provide respondent with reunification services. See MCL 712A.19a(2)(a) and MCL 722.638(1)(a)(*ii*) and (2). See also *In re Mason*, 486 Mich at 152, quoting MCL 712A.19a(2). Regardless, when the court inquired whether, in lieu of termination, guardianship was appropriate given the children's placement with a relative, the L-GAL said that both children "unequivocally expressed that they [did] not desire to have a parent[-]child relationship with" respondent and that they needed "to create additional separation to protect their own health and wellbeing. . . ." The record also reflects that both children, who were "of an age to articulately express" their opinions, previously informed the L-GAL that they desired "to have their adoptive father's [parental] rights terminated."

Moreover, respondent's change of heart does not entitle respondent to revoke his release when the transcript clearly established that his release was knowing and voluntary. Cf. *In re*

---

[1] Although the pertinent citation at the time *In re Mason* was decided was to MCL 712A.19a(6)(a), the language quoted is now found in MCL 712A.19a(8)(a).

*Curran*, 196 Mich App 380, 384-385; 493 NW2d 454 (1992). Here, the transcript shows that the trial court did not clearly err by terminating respondents' parental rights. It acted after determining that respondent knowingly, voluntarily, and understandingly pleaded to the court's jurisdiction, and, thereafter, knowingly and voluntarily terminated his parental rights. As already discussed, respondent was 65 years old and had some college education. Respondent was not under the influence and affirmed that he wanted to voluntarily terminate his parental rights to the children. The court detailed the parental rights that respondent would be foregoing. Contrary to respondent's post-termination letter, respondent, who was under oath at the time of the voluntary termination, affirmed that he had the opportunity and time to discuss the option of giving up his parental rights with his attorney and that no one had coerced, tricked, threatened, or promised him anything to execute the voluntary termination. In fact, respondent had contemplated this decision and made it of his own free will. Respondent recognized that his decision would last a lifetime. The trial court explained how adoption records were closed, but might be released in limited circumstances. The court also explained additional legal processes to respondent and urged him to get support. Respondent affirmed that he believed that it was in the children's best interest for his parental rights to be terminated. Finally, the trial court asked respondent if he had any questions. Respondent answered: "No."

In this case, the transcript shows that, before taking respondent's testimony regarding his voluntary termination of parental rights, the trial court asked several questions to confirm that respondent's decision was knowing and voluntary and that respondent fully understood what he was about to do. Nothing in the record suggests that respondent's voluntary release of his parental rights was the result of misunderstanding, intimidation, coercion, deception, or haste. Rather, the record shows that respondent's plea, stipulations, and release were tendered freely, deliberately, and with full understanding.

We therefore hold that the trial court did not plainly err in concluding that respondent's plea to its jurisdiction over the children was valid. The same is true of respondent's stipulations regarding the specific statutory ground for termination and the children's best interests. With that conclusion, our appellate review comes to an end. As explained in *In re Pawloski*, ___ Mich App at ___; slip op at 6, a valid release of parental rights is "binding," and therefore deprives the parent of the status of "an 'aggrieved party' under MCR 7.203(A) with respect to the trial court's . . . findings in support of a termination to which [the parent] consented." Accordingly, we are without operational jurisdiction to review respondent's claims regarding the trial court's statutory grounds determination and best-interest findings. "The exception that opens the door to appellate review— our ability to assess the validity of the release—closes once the release is found valid." *Id.*

Affirmed.

/s/ Colleen A. O'Brien
/s/ Christopher M. Murray
/s/ Anica Letica